JAMES D. TATUM, ADMINISTRATOR, ETC., *v.* SARAH L. McLELLAN, EXECUTRIX, ETC.

1. TRUST AND TRUSTEE. *Improvements. Wrongful retention of possession.*
   A trustee of land, wrongfully retaining possession thereof and using it, in opposition to the direction of the trust instrument to sell, is not entitled to an allowance for his expenditures in making improvements on the land; but he should not be charged an increased rent, caused by such improvements.

2. SAME. *Chancery. Legatee. Measure of relief.*
   A trustee who is the assignee of legacies charged on the trust fund may retain enough of the fund to pay them; nor should the chancery court, at the suit of a single legatee, render a decree against the trustee for the whole fund, but only for enough to pay the suitor.

3. APPEAL. *Reversal of decree. Effect thereof.*
   A decree adverse to the complainant, reversed *in toto* on his appeal, does not estop the respondent, who did not appeal, from showing, on the return of the case to the lower court, that the rate of interest allowed by the first decree on the complainant's claim was too high. *Caston v. Caston,* 54 Miss. 512, distinguished.

4. CHANCERY PRACTICE. *Administering trust estate.*
   A trustee who is assignee of all the legacies but one charged on the trust fund should, on a bill by that one legatee to collect his legacy, be regarded as paid

to the extent of the trust estate which he has appropriated; and the court, after directing a sale of the visible estate, should provide for the payment of all the legacies in full, or *pro rata* if the visible estate and that used by the trustee is not enough to pay them in full.

5. LIFE-ESTATE. *Products thereof. Who takes.*

The profits of a life-estate, on the death of the life-tenant, go to his representatives; nor is the result changed by a provision in the will creating the life-estate that the "increase" of the property shall be kept together and finally sold, it being the clear intention that the life-tenant was to enjoy the profits of the life-estate.

APPEAL and cross-appeal from the Chancery Court of Monroe County.

Hon. LAFAYETTE HAUGHTON, Chancellor.

This litigation was begun by the proper representative of one of the legatees, William Raney, under the will of H. W. Allen, who died in 1855. Martha A. E. Allen, the wife of the testator, to whom he had left the estate for life, married J. D. Tatum, and then died. Tatum had in the meantime become administrator *de bonis non, cum testamento annexo*, of H. W. Allen's estate, and on appeal by him to the Supreme Court a decree rendered in the case was reversed. See *Tatum* v. *McLellan*, 50 Miss. 1. It will be seen by reference to that opinion, that the first question there decided is, on a construction of the fourth clause of the will as to the estate which Mrs. Martha A. E. Allen took thereunder, that she took a life-estate, with power to appoint who should enjoy one-half the remainder, but that her surviving husband, Tatum, not being such appointee, has no interest in such half; and the other question there decided is, that Tatum should be permitted, as the legatees from whom he purchased do not object, to hold the legacies purchased by him, so that he may retain the respective amounts in full, or *pro rata* with other legatees, out of the assets. The case was remanded, with instructions. The decree from which that appeal was taken charged Tatum ten per cent interest on the William Raney legacy; and as Raney's representative, McLellan, alone appealed, and Tatum did not, that error was not assigned, and the opinion does not notice it.

On the return of the case to the Chancery Court an account was stated, and that account is the subject of the present appeal.

The commissioner's report is as follows : —

*James D. Tatum,*
                   *To estate of Henry W. Allen, deceased,*
  1866.                                                              DR.
Jan. 1st.   To value of personal property of said estate on
                  hand at the death of Martha A. E. Tatum... $1,400.00
                  Int. on same from Jan. 1, 1866, to Jan. 1, 1877   1,540.00
   "        Value of 400 bushels of corn on hand at death
                  of Mrs. Martha A. E. Allen, and int...........   660.00
   "        Value of 22 bales of cotton on hand at death of
                  Mrs. Martha A. E. Allen..........................  2,200.00
                  Int. on same from Jan. 1, 1866, to Jan. 1, 1877..  2,420.00

Rent of the plantation for each year from 1866 to 1876, inclusive, as follows, — the rent for 1866 being $300, and that for the subsequent years $600 and $500, and on these rents ten per cent per annum interest is charged up to January 1, 1877, and this concludes the debit side of the account.

    Total............... ............................................$16,705.00
By exceptions sustained..........................................   5,280.00

    Total amount of debits, as restated......................$11,425.00

                                                                    CR.
By improvements on plantation by James D. Tatum, since
    1865 ..................,......... ................................. $3,000.00
Int. on same to Jan. 1, 1877................i...................   3,300.00

    The remainder of the credit side of the account was taxes on the land, and interest thereon.

    Total............................................................ $7,221.37
By exceptions sustained..........................................   6,300.00

    Total amount of credits, as restated...................... $  921.37

Amount debt, as restated............................$11,425.00
   "      credits, as restated.........................   921.37

    Balance due estate from Tatum...............$10,503.63

At the time of Mrs. Martha A. E. Tatum's death, which occurred in 1865, the buildings and fences on the plantation were out of repair, and cabins had to be put up for tenants; otherwise, the place would have been uninhabitable, and its annual rental worth little or nothing. James D. Tatum therefore expended some $3,000 in repairing and keeping repaired the place, which was constantly subject to damage from overflow. A considerable amount of personal property — horses, cattle, and farming implements, such as had survived the war — being on the place at that time, James D. Tatum took possession thereof, and proceeded to cultivate the plantation as repaired. The will of Henry W. Allen directed that on the death of Mrs. Martha A. E. Tatum all the property should be sold and certain legacies paid; so James D. Tatum bought up from the respective legatees all these legacies, except the one on which this suit is founded. Twenty-two bales of cotton and four hundred bushels of corn, which were on the place at the time of Mrs. Martha A. E. Tatum's death, were taken by James D. Tatum, sold, and the proceeds applied to his own uses in conducting the plantation, and, together with the succeeding crops, in paying taxes and other necessary incidental expenses. The twenty-two bales of cotton and four hundred bushels of corn were produced from the property during the term of Mrs. Martha A. E. Tatum's life-estate, and were of the value indicated in the commissioner's report. The ninth item of Henry W. Allen's will is, * * * " that none of my property shall be sold until the death of my wife, * * * but the same, together with the increase thereof, shall be kept together until the sale as directed in item 4th." * * *

The complainant, McLellan, excepted to the commissioner's account, in this: that said executor should not be allowed credit for improvements on the plantation, $3,000 and interest.

The defendant, Tatum, excepted to the report, as follows:
1. To value of personal property on hand at the death of Mrs. Tatum, $1,400. 2. To the twenty-two bales of cotton and

four hundred bushels of corn on hand at Mrs. Tatum's death, because the same was made by Mrs. Tatum in her lifetime.
3. To the rent of the plantation, because excessive.

The chancellor decreed, sustaining the exception of the complainant and the second exception of the defendant, and confirmed the report as thus restated. The decree proceeded to appoint one Gilleylen special commissioner to collect the $10,503.63 thus shown to be due from Tatum to the estate of Henry W. Allen, allowing said commissioner an execution therefor, and directed said commissioner to sell the plantation, vesting title in him for that purpose. The decree further provided that the money, when realized, should be paid *pro rata* on the legacies, allowing ten per cent per annum interest on William Raney's legacy and six per cent on the others, and Tatum was charged with all the costs. From this decree Tatum appealed, and McLellan took a cross-appeal, the former assigning for error, (1) not allowing for the improvements; (2) charging him with excessive rents; (3) requiring the appellant to pay $10,503.63 cash, when he is assignee of most of the legacies; (4) allowing ten per cent interest on the William Raney legacy and only six per cent on the others; and (5) other matters in the final decree; and the latter assigning for error the sustaining of Tatum's exceptions to the charge against him for the twenty-two bales of cotton and four hundred bushels of corn.

*J. M. Acker*, for the appellant and cross-appellee.

1. As to the improvements, it is a universal principle that a trustee in possession of trust property will be allowed all charges necessary to preserve and render profitable the trust estate. *Murray* v. *De Rottenham*, 6 Johns. 52; 1 Mon. 151. Repairs for the relief and protection of the estate are such charges. 1 Gill & J. 273; 2 McCord Ch. 264.

2. The rents were manifestly an overcharge. No witness proves the place to have been worth any thing until improved by Tatum.

3. The court having in the former appeal decided the pur-

·chases of the legacies by Tatum valid, it was error to make him pay the entire $10,503.63; but he should have been allowed to offset his legacies.

4. It was wrong to allow ten per cent interest on the William Raney legacy and only six per cent on the others. This gives an unjust and unfair preference, which could be sustained only on the idea that Tatum's legacies were obtained by fraud; but the assignments thereof have been ·decided to be *bonâ fide*.

5. Tatum should not have been charged as much as $1,400 for personal property. He did not get that amount.

6. There is nothing in the assignment of error by the cross-appellant. The income of the life-estate belonged to the life-tenant, Mrs. Tatum, whose interest, on her death without ·children, went to her husband.

*Houston & Reynolds*, for the cross-appellant and appellee.

1. The former decree, not having been appealed from by Tatum, is conclusive upon him in so far as it directs how the account shall be taken; and even if legally entitled to credit for improvements, the decree bars him. *Caston* v. *Caston*, 54 Miss. 512; 15 How. (U. S.) 451, and authorities there ·cited. But Tatum is not legally entitled to credit for improvements, because a trustee, wrongfully retaining possession of the property, is not entitled to compensation for improvements made by him. *Thompson* v. *Thompson*, 16 Wis. 91; Perry on Tr., sect. 520; *Hazzard* v. *Rowe*, 11 Barb. 22; *Green* v. *Winter*, 1 Johns. Ch. 37–40.

2. The amount charged for the rent is not excessive, nor is the value of the personal property on hand at Mrs. Martha A. E. Tatum's death too great. The testimony being conflicting ·on both these sums, the chancellor's decision must stand.

3. The court did not err in requiring the $10,503.63 to be paid in cash by Tatum, although the larger part of said sum is ·due to him as assignee of certain legacies. Tatum should .settle what he owes before he receives any thin gthat may be ·due to him from the estate.

4. The court was right in directing ten per cent interest to be calculated on the William Raney legacy, and only six per cent on those legacies assigned to Tatum, because McLellan appealed from the former decree and Tatum did not, the interest being fixed at ten per cent by said decree. *Caston* v. *Caston, supra.*

5. While the general rule is, that property raised on the life-estate during the tenant's lifetime goes, at his death, to his personal representatives, yet the will in this case directing that the " increase " shall be kept together with the property until the sale, the will must, therefore, be construed as directing a sale of the property and its increase beyond what was consumed by Mrs. Allen.

CAMPBELL, J., delivered the opinion of the court.

The appellant, Tatum, is not entitled to an allowance for his expenditures in making improvements on the land, but he should not be charged an increased rent, caused by the additions to the land, for which he is denied compensation. Justice will be done by charging Tatum with the rent which the land would have yielded if no improvements had been put on it, and it had been rented as it was without them. To the extent that the rent was increased by the expenditures of Tatum he should not be required to pay it. It is enough for him to suffer the loss of his unauthorized expenditures, without having his loss augmented by requiring him to pay a rent which his expenditures partly produced. It is not proper to require Tatum to pay the commissioner any part of what, by the record, appears to be his by assignment of some of the legacies. The complainant in the bill must be content with getting what is hers; she has nothing to do with what belongs to Tatum, nor has the court. It should not undertake to administer justice except in behalf of suitors. No more should be required to be paid to the commissioner than will pay complainant, and costs. No other person has invoked the aid of the court. Complainant is entitled to be paid her legacy in full, if the

estate is sufficient for the payment of legacies, and she may have the estate sold for that purpose ; but when complainant is satisfied, and the costs paid, this suit will have accomplished its object.

Complainant is not entitled to ten per cent interest on her legacy. No law authorizes it. Six per cent is legal interest ; ten per cent is conventional.

It is a mistake to suppose that this was *res adjudicata*, by reason of the fact that this rate of interest was allowed by the first decree in this case, which was appealed from by the complainant, but not by Tatum. The argument is, that because he did not appeal he is concluded by that decree as to the rate of interest, although the decree on the appeal of the other party was reversed. This view is the result of a misapprehension of the cases cited to support it. The decree spoken of was adverse to complainant, who appealed from it, and it was reversed, and thereby wholly vacated and annulled, and thereafter was to be treated as not having been made. After the decree of reversal by this court, there was no decree in the case except the decree reversing the decree of the Chancery Court, and it was a total reversal.

It is proper to treat Tatum as paid what may be due to him of the estate by what he has received, and to require him to pay any sum which may be necessary, beyond the proceeds of the sale of the visible estate, to pay what is due complainant.

The value of the estate should be ascertained, and the legacies be paid if the estate is sufficient. If not, they are to be paid *pro rata*. But, as the estate may consist chiefly of what Tatum owes it, the money derived from the sale of the property, as far as may be necessary, should be devoted to the payment of Mrs. McLellan, and Tatum must be held to be paid by what he has received of the estate. He should not complain of being required to accept what he owes as a payment of what is due him.

Tatum is entitled to the corn and cotton on hand at the death of Mrs. Tatum, the tenant for life. The will does not

change the rule of law, that the profits of the life-estate belong to the tenant for life, and at her death go to her representatives.

Decree reversed, and cause remanded to be proceeded with in accordance with this opinion; the appellee to pay all costs in this court.