RAWLEY SIVLEY ET AL. *v.* CHARLES H. SUMMERS ET AL.

1. LIMITATIONS OF ACTION. *Estates of decedents. Four years' bar.*
   A promissory note which matures after the maker's death is not within
   Code 1871, § 2155, which provides that no suit shall be brought
   against an executor or administrator, upon a cause of action against
   his testator or intestate, more than four years after his qualifica-
   tion.

2. SAME. *Four years' statute. Notice to creditors.*
   The four years' limitation (Code 1871, § 2155), like the general Statute
   of Limitations, runs without regard to publication for creditors to
   probate their demands, which has no effect on any statute except
   that which requires claims to be registered within a prescribed time.

3. SAME. *Suits against executor. Nine months' suspension. War.*
   Actions on notes maturing before the death of the maker whose execu-
   tor qualified on Aug. 1, 1864, are barred by the four years' limita-
   tion on Aug. 12, 1872, notwithstanding the suspension of the statute
   until April 2, 1867, and the addition of nine months after the execu-
   tor's appointment, during which he cannot be sued.

4. ESTATES OF DECEDENTS. *Insolvency. Decree. Estoppel. Parties.*
   If a sale of land under insolvency proceedings is set aside at suit of
   the heirs who were not made parties thereto, and the purchaser
   seeks to be subrogated to the rights of the creditors whose claims
   were allowed and who received dividends, the heirs may show that
   such claims were barred before the inception of the proceedings.

5. SAME. *Original bill to impeach decree. Fraud. Infants.*
   If innocent strangers' rights have not attached, a sale of the land to
   pay the debts of an insolvent estate may be set aside by the
   heirs, some of whom are minors, by original bill in the court which
   granted the decree, upon the ground that they were not legally served
   with process.

6. SAME. *Recitals in decree. Effect in proceedings direct and collateral.*
   In such a case, recitals in the decree for sale as to service of process and
   proof of publication are only *prima facie* true, and do not cure the
   absence of a summons and the illegality of the citation, although in a
   collateral proceeding, as the record could not be contradicted, they
   would be conclusive. *Crawford* v. *Redus*, 54 Miss. 700, affirmed.

7. EXECUTOR. *Removal and resignation. Successor, when appointed.*
   An administrator *de bonis non cum testamento annexo* can be appointed
   on the removal of an executor or his resignation, without notice to
   the legatees and without waiting for the final settlement, which ter-
   minates liability on the executor's bond. Code 1871, § 1122.

8. BILL TO VACATE SALE.  *Restoration of status quo.*  *Purchaser.*

The sole creditor of an insolvent estate, who has purchased land by col-
lusion with the administrator, and paid for it with his claim, if the
sale is cancelled at suit of the heir, should be restored to his status as
a creditor.

9. SAME.  *Improvements and rents.*  *Good faith.*  *Trustee.*

Improvements which the administrator and his confederate, who hold
under the fraudulent sale, have put on the land should not be allowed
them, but they should not be charged increased rent caused by the
improvements.  *Tatum* v. *McLellan*, 56 Miss. 352, cited.

10. SAME.  *Taxes.*  *Lien.*  *Assessment.*  *Land listed to dead person.*

They should be allowed for taxes assessed upon the land, which was
listed in the name of a dead person who had owned a life-estate
therein, if they alone paid them; *aliter*, if the heir paid the same
taxes.

11. SAME.  *Assessment roll.*  *Approval.*

The result is not altered by the fact that the assessment of taxes was
irregular, because the assessment roll of land was not approved by
the board of supervisors in session at the county town.

APPEAL from the Chancery Court of Hinds County.

Hon. E. G. PEYTON, Chancellor.

On March 2, 1864, G. W. Summers died in Hinds County,
Mississippi, the owner of an estate real and personal, in-
cluding the land in controversy.  He devised his property
to his heirs and his widow, Maria J. Summers, the realty to be
divided among them according to the statute, and appointed
his son, Charles H. Summers, and one Charles Hill, his execu-
tors.  The will was registered in the Probate Court of Hinds
County, where the land lies, and on Aug. 1, 1864, the executors
qualified.  Charles H. Summers resigned April 8, 1868, with the
consent of Hill, but without notice to the legatees, and his
resignation was accepted by the court.  On March 12, 1872,
Rawley Sivley and R. S. Drone, two creditors of G. W.
Summers, by promissory notes, due respectively Feb. 21,
1861, and Jan. 1, 1865, which had been registered as
claims against the estate, petitioned the Chancery Court,
which had succeeded to the Probate Court, to require
Hill to give bond, and upon his failing to respond to a
summons, the order was made.  Hill disobeyed the order, and
on May 25, 1872, was removed, and ordered to make his
final settlement; which neither he nor Charles H. Summers

ever did. Rawley Sivley, who on Aug. 12, 1872, upon his own petition, was appointed administrator *de bonis non cum testamento annexo*, two days afterwards filed a petition and exhibit of insolvency of the estate in the statutory form, showing nineteen debts, consisting of accounts and notes duly probated, but all due between the years 1860 and 1863, except the note for two thousand five hundred dollars, payable to Drone, and described eighteen hundred acres of land as the only remaining property liable to sale, subject to the widow's dower, as the means of partially paying the debts.

The court thereupon ordered notice to the heirs as follows: That summons issue to Hinds County for Charles H. Summers and Louisa C. Summers, adults, and Samuel W. Summers, Bettie B. Summers, and Sallie C. Summers, minors, and to Copiah County for Robert D. Osburn and Lennie L. Osburn, his wife, and that publication be made according to law for Beckwith Bealmaer and Laura B. Bealmaer, his wife, residing at Brook's Station, Bullitt County, Kentucky, to appear at the next November term of court, and show cause why the estate should not be declared insolvent, and the land described be sold. No summons for Mr. and Mrs. Osburn appears in the record. The return of service on the minors was of the ordinary personal service by copy, without reference to their parents or guardian; but the clerk of the court was appointed guardian *ad litem* for them, and filed the formal answer. The order for publication was not published, but a citation was inserted in a newspaper published in the county more than twenty days after the order was made, for four consecutive weeks, as shown by proof of publication and copies mailed, properly directed to Mr. and Mrs. Bealmaer, as shown by the clerk's certificate. At the November term the court ordered that the proof of publication, and of mailing notice, be received and filed, reciting due proof of publication and of sending copies to the non-residents and that process was duly served on all the other parties.

The decree which declared the estate insolvent was made Nov. 18, 1872. Reciting that due proof of publication and of sending copies to the non-residents was made, and that process was duly served upon all the other parties, the decree ordered

the sale of the land, and directed the administrator to give three months' notice to the creditors to prove their demands, and to administer the estate according to the usual insolvency proceedings. The administrator reported that the sale of the land was regularly made on Dec. 21, 1872, in proper parcels, all of which were purchased by R. S. Drone, for the aggregate sum of four thousand eight hundred dollars, one-third, or six hundred acres, which is the part in controversy in this suit, being only a remainder after the widow's dower. The report was confirmed, and the administrator conveyed to Drone. On Feb. 21, 1873, on proof of publication of the three months' notice, and the clerk's report of claims registered, the court ordered them to be taken up on May 19, 1873, for examination and allowance, when the creditors should attend. R. S. Drone, Rawley Sivley, and others excepted to all the other claims. Their exceptions were sustained, and the proceeds of the land sale were ordered to be distributed among them, the debts to Drone and Sivley amounting to about fifteen thousand dollars, and the others allowed to about three hundred dollars. Thereupon the administrator filed his final settlement, showing that he had four thousand four hundred dollars to be paid *pro rata* on the debts established and on May 19, 1873, he was finally discharged. The dividend report was filed by the clerk, showing the *pro rata* of Drone to be fourteen hundred and thirty-four dollars, and that of Sivley twenty-six hundred and ninety-seven dollars. This report was confirmed on May 27, 1873, and the administrator ordered to stand acquitted upon paying these sums.

The widow died in July, 1876; and Rawley Sivley and R. S. Drone then demanding possession, and putting tenants on the place, on June 26, 1877, Charles H. Summers and the other heirs and devisees who continued to hold after the widow's death, filed an original bill in the Chancery Court of Hinds County against them to vacate the decree and sale and the administrator's deed to Drone, and the deed from him to Sivley, upon the following grounds : — (1) that Charles H. Summers was the executor undischarged at the time Rawley Sivley was appointed administrator, *de bonis non*

*cum testamento annexo*, and therefore Sivley's appointment
was void.   (2) There was no service of process on R. D.
Osburn and his wife.   (3) There was no valid service of
process on the minor heirs.   (4) There was no valid con-
structive service on Beckwith Bealmaer, and Laura B., his
wife.   (5) The lands were purchased at the sale by the
pretended administrator and Drone jointly.   (6) The peti-
tion for sale does not show that there were any valid demands
against the estate at the time it was filed.   The answer con-
troverted these several propositions, and relied also on the
Statute of Limitations of Code 1871, § 2173.   From an adverse
decree on final hearing, the defendants appealed to the Su-
preme Court, which held the administrator's sale void upon
the single ground that Drone and he confederated to purchase
the land jointly, and remanded the case to give the defendants
an opportunity to propound their claim to fasten upon the
land a charge for one-third of the amount paid by them in the
purchase, and to afford the means of determining for what
amount, under the facts of this case, the lien should be estab-
lished, and whether the allowance of the claims in the pro-
ceeding of insolvency should be accepted as conclusive, or the
heirs could, in resisting the establishment of the charge, show
that the debts were barred.

On the return of the case to the Chancery Court the defend-
ants filed an amended answer and cross-bill under oath, in
which they asserted their right to fasten a charge upon the
land ; asked as an offset against rents sums paid by them as
taxes and for valuable improvements ; denied that their claims
against the estate were barred by the Statute of Limitations,
and alleging that their joint demands, or Drone's alone, ex-
ceeded the proceeds of the land, pleaded that if the other
claims were barred the heirs were not prejudiced by the *pro
rata* payment, and insisted that if the decree should be an-
nulled the entire proceeds of the sale should be decreed to
them, rather than to the heirs.   After further alleging that
the purchase-price was paid in good faith by the surrender of
their notes, they prayed that, if the sale should be vacated,
the heirs be compelled to refund the amount thereof, or

that they be restored to their condition as creditors. The evidence showed that during the years 1877, 1878, and 1879, the land was listed in the name of the deceased widow, that the taxes for 1877 were paid both by the complainants and the respondents, and that the latter paid the taxes for 1878 and 1879. The only order of approval of the assessment roll of lands in Hinds County in 1875, which the record disclosed, was made by the supervisors assembled at Jackson. It was further proved that the defendants had collected rents and made improvements in 1877, but that during the two following years a receiver had been in possession. On the final hearing it was decreed that the cross-bill be dismissed, and the relief prayed for in the original bill granted. From that decree the defendants appealed.

*W. P. Harris*, for the appellants, argued the case orally and filed a brief.

1. The objection to the appointment of Sivley as administrator is not well taken. Summers's resignation did not discharge him from accountability, nor did the removal of Hill have that effect as to him. The object of citing the heirs is that they may contest the account; and both remained liable to account. Code, §§ 1120–1122. The appointment of Sivley was valid. The sale of the land in the insolvency proceeding has been set aside on grounds independent of the character of that proceeding. Sivley, the administrator, being a partner of Drone in the purchase at his own sale, the heirs elected to set aside the sale for that cause amongst others; and this court held that cause to be sufficient, without noticing the others. The question now presented is, What are the rights of these purchasers? They were creditors, or claimed to be such, as well as purchasers, their debts having been used in the purchase. These rights are to be considered with reference to two aspects of the case. First, how do they stand under a valid decree of sale? Second, how under an invalid decree, that is, a void decree?

2. If the decree was valid, and merely erroneous, the consequence would be that the action of the court, in passing the claims of creditors, must stand. The jurisdiction of the court in such a proceeding is complete over the question of debt or

no debt. The statute withdraws the subject from all other courts, and vests in the Chancery Court the decision of all questions concerning the claims presented, as fully as the jurisdiction to distribute an estate. Its decree is final and conclusive until reversed. It matters not what the objection to the claim may be, — payment, lapse of time, or want of validity on any ground, — they are all presumed to be judicially determined. The court is required to examine each claim, before allowing it, and its allowance has all the force of a judgment establishing the claim in any other court. Code 1871, § 1161; *Winn* v. *Barnett,* 31 Miss. 653. The result must be, therefore, if the decree of insolvency was valid, that the whole amount of the purchase-money must be refunded to the purchasers, for it is shown that there was a substantial application of it to debts established, and therefore binding on the property. Courts of equity have uniformly allowed this, where the sale has been set aside at the election of the heirs. They have allowed not only the purchase-money, but taxes paid, and improvements which have added value to the estate. 1 Perry on Trusts, § 197, 205; *Michoud* v. *Girod,* 4 How. 503; *Davoue* v. *Fanning,* 2 Johns. Ch. 252; *Charles* v. *Dubose,* 29 Ala. 367; *Andrews* v. *Hobson,* 23 Ala. 219. These are cases of purchases by executors or administrators of the property of the estate. The sales are avoided on grounds of public policy only. In this State the principle has been applied to a case of actual fraud in the purchaser, as where there was a combination to prevent bidding. *Grant* v. *Loyd,* 12 S. & M. 191. The cases of *Short* v. *Porter,* 44 Miss. 533, and *Gaines* v. *Kennedy,* 53 Miss. 103, show a full recognition of the doctrine. The act of 1873 (Acts 1873, p. 41) was not intended to restrict the right of the purchaser, but to extend it and give it wider operation. The actual payment and application of the money is the only test under the act. If for any cause the sale is void, the purchase-money actually paid, and applied to extinguish valid debts, must be refunded. The act recognizing this right as a substantive right has not confined it to the cases in which the heir seeks to recover the land of the purchaser, but extends it to his vendee, and gives the right to set off the purchase-money in the action of eject-

ment. The result is plainly marked out, if the decree of insolvency was valid.

3. It is insisted, however, that it was void; and that the subsequent action of the court on the claims was void also as a consequence. The ground of invalidity is the alleged want of jurisdiction of the parties; and to give force to it, it is urged that the jurisdiction to sell lands to pay the debts of a decedent is special and limited. The court had jurisdiction of the subject-matter, and where that is conceded, the matter of acquiring jurisdiction over the parties is the same in all courts. The difference between the jurisdiction conferred over the subject by the Constitution or by statute, and that which the court acquires through its own process and orders, is obvious. As to the subject-matter, the court cannot conclusively determine its jurisdiction. Its decision that it has jurisdiction gives no force or validity to the claim. A higher law governs that. The court may, however, conclusively decide whether it has acquired jurisdiction of a party. The power to acquire jurisdiction of the parties interested in a subject-matter is incident to judicial power, wherever lodged. If a statute should omit to prescribe a process, the court, being charged to decide, would have the inherent power to issue a summons. A court having the power to acquire jurisdiction by its process and orders is necessarily vested with the power to decide whether it has acquired the jurisdiction of the person. Its decision may be erroneous, but it is not void for error in this respect. In the matter of acquiring jurisdiction of non-resident parties, the means are the same in all our courts. The fact of publication according to law is, by the very terms of the statute, proved by deposition. Recitals that parties have been served with process, and that publication has been made, mean the same thing in all courts. They mean, first of all, that the court has considered and decided the point, and then they import truth. Judgments, therefore, of courts of any grade having jurisdiction of the subject, in which it appears that they decided that process had been served or publication made, are conclusive in any collateral proceeding. They are bound to decide the very matter; and a decision of it, if wrong, is only erroneous. *Cason* v. *Cason*, 31 Miss. 578; *Field* v.

*Goldsby*, 28 Ala. 218; *Hendrick* v. *Whittemore*, 105 Mass. 23; *Kipp* v. *Fullerton*, 4 Minn. 473; *Richards* v. *Skiff*, 37 Cal. 465; *Quivey* v. *Baker*, 8 Ohio St. 586; *Callen* v. *Ellison*, 13 Ohio St. 446; *Cocks* v. *Simmons*, *ante*, 183. The recital in the decree is full, that all parties had been duly served with process, and that proof of publication against the non-resident parties had been made. It is urged that the minors were not served in the manner required by the statute. It will be observed that the provisions of the Code of 1871, respecting sales of the lands of decedents for the payment of debts, are the same as those of the Code of 1857. The general provision — that process shall be served on the infant defendants and on their guardian — relates to cases where process is required to be served on the infant. In the proceeding in question here, the statute does not require service on the infant. *Burrus* v. *Burrus*, 56 Miss. 92; *Johnson* v. *Cooper*, 56 Miss. 608. There does not appear in the record any summons returned against Osburn and wife. The recital of service is conclusive as to this fact. The mere absence of the process from the record does not contradict the recital. *Cocks* v. *Simmons*, *ante*, 183. The administration of estates and jurisdiction in equity are confided to the same court. The means of obtaining jurisdiction of the person is the same in both cases. The process is served, where it is required to be served, in the same way, by the same officer, and the evidence of such service is precisely the same in all the proceedings of that court; and it appears unreasonable to distinguish between recitals in the one case and those in the other.

4. Assuming the decree to be valid, and the sale voidable only at the election of the heirs, then the purchase-money must be refunded to the purchaser, who, in the class of cases to which this belongs, will either recover his money or hold the land; and this principle is to be carried out, so far as it is practicable. Where the purchase-money has not been paid, or is still within the power of the court, the rule is to order a re-sale, in which the property is offered at the price bid by the purchaser, and if no one bids more, the first sale is permitted to stand; but where the purchase-money has passed beyond the control of the court, and has been applied to legitimate

charges on the estate, then the amount, with interest, must be refunded. If, on the other hand, the court, on the grounds alleged against the validity of the proceedings, should hold them void, then we contend that the creditors, whose claims were valid at the date of the decree, are remitted to their original relations to the estate. If it appears that a creditor was a purchaser for his debt, he must be treated now as a purchaser or as a creditor. The court proposes to make full restitution to the heirs of their inheritance, but will not confiscate to their use valid debts. If the insolvency proceeding was void and altogether ineffectual to subject the property to the satisfaction of the debts, they are not for that reason extinguished. The purchasing creditors here were so placed that they must await the action of those who alone had the right to question the proceedings. So long as the heirs forbore to complain, the purchasers must act on the supposition of a legal disposition of the whole subject. Their claim to be paid their debts by a re-sale or otherwise, or for reimbursement of purchase-money, springs from the assertion by the heirs of title to the property; and it cannot be said that the Statute of Limitations can be applied to their debts. Their hands, at least, were tied by the decree of insolvency. In one character or the other, therefore, the appellants must, on settled principles, be allowed to charge the lands as purchasers or as creditors.

*T. J. & F. A. R. Wharton*, on the same side.

1. The recitals in the decree as to publication of notice for, and service of process on, the heirs and devisees of G. W. Summers, are conclusive of such facts, unless they are contradicted or disproved by other portions of the same record, and cannot be invalidated in any collateral suit, nor can they be disproved by parol evidence. *Byrd* v. *State*, 1 How. 163; *Smith* v. *Denson*, 2 S. M. 326; *Hardy* v. *Gholson*, 26 Miss. 70; *Cason* v. *Cason*, 31 Miss. 578; *Cannon* v. *Cooper*, 39 Miss. 784; *Pollock* v. *Buie*, 43 Miss. 140; *Lambeth* v. *Elder*, 44 Miss. 80; *Wells* v. *Smith*, 44 Miss. 296; *Cole* v. *Johnson*, 53 Miss. 94; *Dogan* v. *Brown*, 44 Miss. 235; *Voorhees* v. *Bank of United States*, 10 Peters, 449; *Yerger* v. *Fergusson*, 55 Miss. 194; *Cocks* v. *Simmons*, *ante*, 183. The decision in

*Crawford* v. *Redus*, 54 Miss. 700, so far as it holds that such recitals are *prima facie* evidence only, is in conflict with the decisions in all the foregoing cases; and it was not decided in that case that they could be disproved by parol evidence. Under the decision in *Cocks* v. *Simmons*, *ante*, 183, the mere absence from the files of the cause of a summons for Osburn and wife cannot operate to disprove the recitals in such decree. Counsel for the appellees rely upon Cooley Const. Lim. 405, 406, to show that the records of courts of special jurisdiction must show all necessary jurisdictional facts, and that such recitals may be contradicted by parol evidence. Yet the same author says, at p. 407 : "This we conceive to be the general rule, though there are apparent exceptions as to those cases where the jurisdiction may be said to depend upon the existence of a certain state of facts, which must be passed upon by the courts themselves, and in respect to which the decision of the court once rendered, if there was any evidence whatever on which to base it, must be held final and conclusive in all collateral inquiries, notwithstanding it may have erred in its conclusions." If the decree was erroneous only, it could not be reversed or vacated except under a writ of error or an appeal, and, until so vacated, no relief could be granted to the appellees either by the Chancery Court or by this court.

2. Although the publication of the notice to Bealmaer and wife was not commenced within twenty days from the date of the decree therefor, as provided in Code 1871, § 1013, yet, as copies of such decree were mailed to them in time, this should be regarded as a sufficient compliance with the manifest intention of the legislature disclosed in this section, and such construction must be given to it, even though it may not strictly consist with its language. *Ingraham* v. *Speed*, 30 Miss. 410; *Cason* v. *Cason*, 31 Miss. 578 ; *Olive* v. *Walton*, 33 Miss. 103; *McIntyre* v. *Ingraham*, 35 Miss. 25 ; *New Orleans Railroad Co.* v. *Hemphill*, 35 Miss. 17; *Koch* v. *Bridges*, 45 Miss. 247 ; *Virden* v. *Bowers*, 55 Miss. 1; *Knowles* v. *Summey*, 52 Miss. 377. Again, such publication and mailing of notice are entitled to the same force and effect as a defective service of process personally, which would only render such decree

for sale erroneous, and not void, until reversed on appeal or writ of error. *Smith* v. *Bradley*, 6 S. & M. 485 ; *Campbell* v. *Hays*, 41 Miss. 561 ; *Hanks* v. *Neal*, 44 Miss. 212 ; *Harrington* v. *Wofford*, 46 Miss. 31 ; *Hendricks* v. *Pugh*, ante, 157. It was not necessary, under Code 1871, § 1158, that the summons for the minor heirs of G. W. Summers should have been also served on their mother. The record shows that neither of them had a legal guardian of their person and estate. That section is a copy of Code 1857, p. 448, art. 98. *Winston* v. *McLendon*, 43 Miss. 254 ; *Wells* v. *Smith*, 44 Miss. 296 ; *Johnson* v. *Cooper*, 56 Miss. 608 ; *Burrus* v. *Burrus*, 56 Miss. 92 ; *Bailey* v. *FitzGerald*, 56 Miss. 578. Previous to the Act of April 15, 1876 (Acts of 1876, p. 188, § 32), the only statutes which required that process for a minor should also be served on his father, mother or guardian, if he had any in this State, were Code 1871, §§ 704, 1006, the former of which applied only to process from a Circuit Court, and the latter only to courts of chancery in the exercise of their general equity jurisdiction. The fact that Charles H. Summers was allowed to resign as one of the executors of G. W. Summers, without notice to the heirs and devisees, could not invalidate the appointment of Rawley Sivley as administrator *de bonis non cum testamento annexo*, although the final account then rendered by him would be void for want of such notice. Code 1857, p. 439, arts. 64–67; *Dowd* v. *Morgan*, 23 Miss. 587.

3. The decree for sale of the lands was not void if any one of the debts probated and registered against the estate of G. W. Summers was then unpaid, and not barred by any Statute of Limitations, as in such case it would have been erroneous only, to the extent of such claims as were then barred by the Statute of Limitations. *Ferguson* v. *Scott*, 49 Miss. 500 ; *Yandell* v. *Pugh*, 53 Miss. 295 ; *Yerger* v. *Ferguson*, 55 Miss. 190. The legal representatives, heirs and devisees of G. W. Summers are estopped from pleading the Statute of Limitations against any of the debts which were probated and registered against his estate, and which were not barred by the Statute of Limitations at the time of his death, because no notice of the grant of letters testamentary, or of administration, was published as provided for in the Codes of 1857, p. 443, art.

81, or in the Code of 1871, § 1135 ; and because this art. 81 of the Code of 1857 was suspended, previous to the death of said Summers, until twelve months after the then war, by the following statutes : Act of Aug. 5, 1861 (Acts 1861, called session, p. 74) ; Jan. 29, 1861 (Acts 1861–2, p. 235) ; and Dec. 31, 1862 (Acts 1862, p. 78). *Helm* v. *Smith*, 2 S. & M. 403 ; *Dowell* v. *Webber*, 2 S. & M. 452 ; *Pearl* v. *Conley*, 7 S. & M. 356 ; *Branch Bank* v. *Windham*, 31 Miss. 317. As this court has frequently decided that the Statute of Limitations was suspended until the second day of April, 1867, and that suits cannot be brought against an executor or administrator until after nine months from his appointment, the claims of Rawley Sivley, R. S. Drone, and others, were not barred by the six years' Statute of Limitations on Aug. 14, 1872, when the petition for the sale of the lands was filed in the Chancery Court. But if all these claims were barred by the four years' Statute of Limitations (Code 1857, art. 11, p. 400, which is the same as Code 1871, § 2155), except the one in favor of R. S. Drone, which did not become due until after the death of G. W. Summers, and which became due on Jan. 1, 1865, this was not barred by the four years' Statute of Limitations. This made Drone a valid creditor at the time the estate of G. W. Summers was declared insolvent, and the decree for the sale of his lands was made. *Bingaman* v. *Robertson*, 25 Miss. 501 ; *Pope* v. *Bowman*, 27 Miss. 194 ; *McLean* v. *Ragsdale*, 31 Miss. 701 ; *French* v. *Davis*, 38 Miss. 218 ; *Buckingham* v. *Walker*, 48 Miss. 609.

4. The purchase price for the lands was paid in good faith, and was applied in good faith to the payment of the debts due by G. W. Summers. But it is immaterial whether the purchase-money was so paid or applied, as in any case, even if the sale of the lands was void because of the alleged fraud, Drone and Sivley, or Drone, if his claim against G. W. Summers's estate was the only valid one, would be entitled to a lien on the lands sold to the extent that such purchase-money discharged debts then valid against such estate. Acts 1873, p. 41 ; *Grant* v. *Lloyd*, 12 S. & M. 191 ; *Short* v. *Porter*, 44 Miss. 533 ; *Gaines* v. *Kennedy*, 53 Miss. 103 ; *Hill* v. *Billingsly*, 53 Miss. 111 ; *Cole* v. *Johnson*, 53 Miss. 94.

The words " in good faith," used in the Act of Feb. 11, 1873 (Acts 1873, p. 41), with reference to the application of money arising from the sale of real estate, should not be construed in any technical sense, but only as intended to show that it should be applied without knowledge of any fraud by the administrator or purchaser. *Cole* v. *Johnson*, 53 Miss. 94; *Morgan* v. *Hazlehurst Lodge*, 53 Miss. 665. The appellants should also be allowed credits for taxes and the value of the improvements made on the lands as against charges for the rent thereof. *Cole* v. *Johnson, ubi supra.*

*F. A. R. Wharton,* on the same side, made an oral argument.

*W. Calvin Wells,* for the appellees, argued orally and filed a brief.

1. Drone and Sivley should not be paid, by virtue of the Statute of Feb. 11, 1873 (Acts 1873, p. 41), any portion of the amount bid by them. (1.) Because the purchase-money arising from such sale was not paid in good faith by the purchaser. Code 1871, § 2173, simply requires that the money shall be " paid," while Acts 1873, p. 41, requires that it shall be paid in " good faith." It has been decided by this court that the element of " good faith" referred to in § 2173, Code 1871, does not exist in this sale. *Summers* v. *Brady,* 56 Miss. 10. (2.) The statute requires the money to be paid to the administrator, which Rawley Sivley was not, because he was appointed while Charles H. Summers was undischarged as executor. By the common law an executor or administrator could not resign his trust. He must hold it until the estate is finally administered. Under Hutch. Code, p. 674, he could resign by giving sixty days' notice, by posting notices at the court-house door, and by publishing such notice in a newspaper for such length of time as the court might deem necessary. And Code 1857, p. 439, art. 67, provides that he may surrender his trust on " giving the proper notice to the distributees." The resignation could not be accepted without notice to the heirs, and it is absolutely void. *Winborn* v. *King,* 35 Miss. 157; *Treadwell* v. *Herndon,* 41 Miss. 38; *Neal* v. *Wellon,* 12 S. & M. 649; *Neylans* v. *Burge,* 14 S. & M. 201; *Fort* v. *Battle,* 13 S. & M. 133; *Steen* v. *Steen,* 25 Miss. 513; *Henderson* v. *Winchester,* 31

Miss. 290 ; *Rives* v. *Patty*, 43 Miss. 338. The statute allowing administrators to surrender their letters, being in derogation of the common law, should be strictly construed. If Charles H. Summers was executor at the time Rawley Sivley was appointed administrator, the appointment is void. Code 1871, §§ 1120, 1121 ; *Vick* v. *Mayor of Vicksburg*, 1 How. 349 ; *Boyd* v. *Swing*, 38 Miss. 182 ; *Lewis* v. *Brooks*, 6 Yerger, 167 ; *Griffith* v. *Frazier*, 8 Cranch, 9 ; *Flinn* v. *Chase*, 4 Denio, 90 ; *Pryor* v. *Downey*, 50 Cal. 389 ; *Long* v. *Burnett*, 13 Iowa, 28 ; *Frederick* v. *Pacquette*, 19 Wis. 541 ; *Sitzman* v. *Pacquette*, 13 Wis. 291 ; *Haynes* v. *Meeks*, 20 Cal. 228. If Sivley's appointment is void, then all his acts, as administrator, are void. *Sitzman* v. *Pacquette*, 13 Wis. 291 ; *Chase* v. *Ross*, 36 Wis. 267 ; *Sumner* v. *Parker*, 7 Mass. 79 ; *Withers* v. *Patterson*, 27 Texas, 449 ; *Ex parte Barker*, 2 Leigh, 719 ; *Miller* v. *Jones*, 26 Ala. 247 ; *Unknown Heirs* v. *Baker*, 23 Ill. 484 ; *Enicks* v. *Powell*, 2 Strob. Eq. 196 ; *Matthews* v. *Douthitt*, 27 Ala. 273. (3.) The purchase-money was not applied in good faith to the payment of debts of the decedent. The claims were all barred. Code 1871, § 2155. There can be no controversy as to any claim but Drone's ; but that was also barred. The object of the statute was to fix the limit of four years during which an administrator could be sued. If the claim accrued prior to the death of the decedent, then the four years would begin from the grant of letters of administration. But if it should accrue at a subsequent time, then the statute begins to run when it falls due. This view of the statute is not in conflict with the various decisions of our Supreme Court thereon. Failure to give notice has no bearing on the Statute of Limitations, but refers exclusively to the probate of claims.

2. The decree of insolvency and allowance of the claims is void. No process is in the papers in the cause for Osburn and wife. They were not summoned to contest. It is not enough for a decree to recite that the defendants have been ·served with process, but the summons should appear. *Stampley* v. *King*, 51 Miss. 728 ; *Dogan* v. *Brown*, 44 Miss. 235 ; *Hanks* v. *Neal*, 44 Miss. 212 ; 2 Dan. Ch. Prac. 1002, *n.* 4 ; *Randall* v. *Songer*, 16 Ill. 27 ; *Hanson* v. *Patterson*, 17 Ala. 738 ; *Green*

v. *Breckenridge*, 4 Monroe, 541; *Peers* v. *Carter*, 4 Litt. 269; *Pouns* v. *Gartman*, 29 Miss. 133; *Schirling* v. *Scites*, 41 Miss. 644; *Edwards* v. *Toomer*, 14 S. & M. 75; *Dean* v. *McKinstry*, 2 S. & M. 213; *Pittman* v. *Planters' Bank*, 1 How. 527. The jurisdiction is special and limited, and the recitals may be shown to be false. Cooley Const. Lim. 405, 406. Osburn and wife, not having notice of the petition, as the law directs, the whole proceeding is void, and being void as to them, is void as to all. *Root* v. *McFerrin*, 37 Miss. 17; *Hamilton* v. *Lockhart*, 41 Miss. 460; *Martin* v. *Williams*, 42 Miss. 210; *Stampley* v. *King*, 51 Miss. 728; *Mundy* v. *Calvert*, 40 Miss. 181; *Ware* v. *Houghton*, 41 Miss. 370; *Dogan* v. *Brown*, 44 Miss. 235; *Winston* v. *McLendon*, 43 Miss. 254; *Laughman* v. *Thompson*, 6 S. & M. 259; *McLaurin* v. *Parker*, 24 Miss. 509; *Kempe* v. *Pintard*, 32 Miss. 324; *Shipp* v. *Wheeless*, 33 Miss. 646. And again there was no valid constructive service of process on Mrs. Bealmaer and her husband. Code 1871, § 1013, directs how the notice shall be given to non-residents. The defects in this order of the court for publication are fatal. Again, the said probate proceeding is void for the want of proper service of process on the minors. No copy was served on the mother. Code 1871, §§ 704, 1006, 1158. The process should be served on the infant personally, and upon his father, or mother, or guardian, if he have any in this State. *Mullins* v. *Sparks*, 43 Miss. 129; *Winston* v. *McLendon*, 43 Miss. 254. The court did not acquire jurisdiction over the infant heirs. *Price* v. *Crone*, 44 Miss. 571; *Ingersoll* v. *Ingersoll*, 42 Miss. 155. For the foregoing reasons, and also because, Sivley not being administrator, his petition was a nullity, the decree of the Chancery Court allowing the claims is not binding on the heirs.

3. All the reasons assigned why Sivley and Drone are not entitled to the relief asked under the statute, apply with equal force to the equitable doctrine of subrogation. The administrator can stand in no better attitude than the creditors whose claims he has paid. *Wallace's Appeal*, 5 Penn. St. 103; *Bright* v. *Boyd*, 1 Story, 478; *Valle* v. *Fleming*, 29 Mo. 153. Sivley was not the administrator of the estate, nor was Drone. He therefore had no interest in discharging these pretended debts, and cannot be subrogated to the rights of

the pretended creditors. *Lafon* v. *White*, 3 La. Ann. 497. The legal subrogation extends only to cases when a person pays a debt which he has an interest in discharging. *Pecquet* v. *Pecquet*, 17 La. Ann. 204. A mere volunteer cannot be subrogated. *Sherin* v. *Budd*, McCarter (N. J.), Ch. 235. An administrator is under no personal obligation to pay a judgment against his intestate with his own funds, and if he does, he will not be substituted to the rights of the judgment creditor. The doctrine of subrogation only applies when the party advancing the money stands in the relation of surety, or is compelled to pay to protect his own rights. Subrogation cannot take place by effect of law beyond the amount actually disbursed. *Shropshire* v. *Creditors*, 15 La. Ann. 705; *Roman* v. *Forstall*, 11 La. Ann. 717; *Fuselier* v. *Babineau*, 14 La. Ann. 764.

4. As to the taxes and improvements; (1.) To claim pay for improvements, the statute (Code 1871, § 1557) requires that the improvements should have been made before the defendant had notice of the intention of the plaintiff to bring suit, which is not shown to have been the case here. Again, the statute requires that the party making the improvements should be in possession under some instrument of writing acquired in "good faith." This court has already decided that the title of Sivley and Drone was not acquired in good faith. The executor, who is a trustee, cannot, after fraudulently procuring title to the trust estate, claim for himself and his confederate the expenditures which they have made thereon. *Tatum* v. *McLellan*, 56 Miss. 352. (2.) The chancellor properly refused to allow anything for the taxes. The record shows that the heirs of G. W. Summers, deceased, paid the taxes themselves for the year 1877. The lands were assessed to Mrs. Summers, and the payment by Sivley and Drone of the taxes was voluntary and unauthorized. Payment of taxes under these circumstances created neither a lien on the land nor an enforceable demand against the owner. *Ingersoll* v. *Jeffords*, 55 Miss. 37. Again the assessment roll of land, which was improperly approved in 1875, rendered the taxes void for the succeeding four years. Code 1871, §§ 1675, 1685. There was no legal demand against the land for taxes, and the payment by Sivley and Drone created no demand against its owners.

CAMPBELL, J., delivered the opinion of the court.

At the time of the appointment of Rawley Sivley, administrator *de bonis non cum testamento annexo* of G. W. Summers, deceased, all the claims against said decedent were barred by Code 1871 § 2155 continued in force from the Code of 1857, except the claim of R. S. Drone, evidenced by the promissory note of the testator, due and payable Jan. 1, 1865. It was not barred, because it matured after the death of the testator and maker, and, therefore, was not a cause of action against him, and, according to repeated decisions, is not affected by the statute cited. *Bingaman* v. *Robertson*, 25 Miss. 501; *Pope* v. *Bowman*, 27 Miss. 194; *French* v. *Davis*, 38 Miss. 218; *Buckingham* v. *Walker*, 48 Miss. 609.

The other claims against the testator matured in his lifetime, and were subject to the operation of the section of the Code cited. We begin the computation of time on April 2, 1867, and add nine months, during which a suit could not be brought against the executors, and the result is as stated. The four years' bar was independent of publication by the executors of notice to creditors. That publication is important only with reference to the requirement to present and register claims against the decedent. The four years' statute cited, and the general Statute of Limitations, run without regard to publication by the executor or administrator of notice to creditors. Whether that publication is made or not has no effect on any statute, except that which requires claims to be presented and registered within a prescribed time.

The decree for the sale of the land of G. W. Summers, which this bill seeks to vacate, was made on the application of Rawley Sivley, as administrator *de bonis non cum testamento annexo* to pay debts of the decedent, all of which, except one, were barred by the Statute of Limitations. We have heretofore held that the sale of the land, and the purchase by Drone, were voidable, and we remanded the case for Sivley and Drone to propound their claim to be substituted to the rights of creditors as to the land. We left it an open question, whether it could be shown that the claims against the estate were barred. We have now to meet that question, and we answer it in the affirmative.

This is a bill seeking relief against a former decree of the court in which it is exhibited, which was obtained by what the law regards as fraud and imposition, even though the action of the party obtaining it was ever so honest in fact. "A decree obtained without making those persons parties to the suit in which it is had, whose rights are affected thereby, is fraudulent and void as to those parties." Story Eq. Pl. § 427. Mrs. Osburn and Mrs. Bealmaer were not legally made parties to the suit. The infant defendants are entitled to impeach the decree, because it is improper, although it was not obtained by fraud or surprise, independently of the question of whether they were parties to the suit or not. Story Eq. Pl. § 427. The parties against whom relief is sought are not *bona fide* purchasers under the decree, but are the administrator who procured it, and his confederate in the purchase of the land at the sale which we have heretofore pronounced voidable at the election of the complainants in this bill. This is an application by original bill to the court which granted the decree for relief against that decree, and the rights of no innocent person are involved.

The recitals in the decree for the sale of the land, as to service of process and proof of publication, are *prima facie* true. In this proceeding they are not conclusive. In a collateral proceeding these recitals would be conclusive, because, in such case, they could not be shown to be untrue, except by the record. Not being liable to attack in a collateral proceeding, their *prima facie* character would amount to conclusiveness, but in this proceeding the recitals of the decree may be contradicted, and, if shown to be untrue, the decree resting upon them for its validity should be opened. It is not to be tolerated, that, because the record may show the concurrence of those facts essential to give the court jurisdiction of a party, he may not, in a proper proceeding in the same court, and against the other parties, show its falsity. It is not to be assumed that a record is false, and yet it may be, and sometimes is, and when shown to be so in a proper proceeding, and between proper parties, the truth must prevail, though the record falls. If, in its fall, no one is harmed, except the one who procured a false record to be made, or those in his shoes

with notice, no wrong is done, and right prevails. We acted on this doctrine in *Crawford* v. *Redus*, 54 Miss. 700, which is said by counsel to be at variance with all the previous decisions of this court on this subject.

We do not agree with counsel as to former adjudications. As we understand them, they announce the correct doctrines to which we steadfastly adhere, that every presumption is to be indulged in favor of the record of a court of general jurisdiction, and that it cannot be controverted in a collateral proceeding. Want of jurisdiction is as fatal to the proceedings of one court as to those of another. No court can render a valid judgment without jurisdiction. It is said that "it is not to be assumed that a court of general jurisdiction has in any case proceeded to adjudge upon matters over which it had no authority; and its jurisdiction is to be presumed, whether there are recitals in its records to show it or not." Cooley Const. Lim. 406. It is a presumption founded on an assumption. But suppose, in a direct proceeding for that purpose, the fact is demonstrated that this assumption is not correct, what becomes of the presumption? We say that every presumption is to be indulged in favor of the jurisdiction of courts of record, and that their recitals are *prima facie* true, and they cannot be questioned in a collateral proceeding; but when directly questioned, in a proper proceeding for that purpose, the truth must prevail, whether the court be of the one grade or the other in the classification of courts. We adhere to *Crawford* v. *Redus*.

The appointment of Sivley as administrator *de bonis non*, with the will annexed, was not void. The fact that notice was not given to the legatees of the surrender of his trust by Summers, as executor, did not hinder the court from accepting the surrender by him, and appointing a successor in the administration of the estate. Notice to distributees or legatees of a surrender of his trust by an executor or administrator is a condition precedent to a valid settlement with the court of the administration account of the person resigning, but the statute, § 1122 of the Code, is not inconsistent with the right of the court to accept a resignation and appoint a successor at once, requiring the outgoing executor or administrator to give

notice and make settlement, until which he remains liable on his bond.

It appears that Drone alone is entitled to be considered a creditor of the estate of Summers at the time of the sale of the land. It is objected that he did not buy in good faith, and that the purchase-money was not applied in good faith to payment of debts, and that nothing should be allowed against the land, on account of the indebtedness of the estate to Drone. Our view is that, in setting aside the sale of the land, the *status quo* of the parties, as nearly as possible, should be restored, and that, as Drone was at the time a creditor of the estate, he should still be so regarded, with the right to charge the third of the land sold and now in controversy in this suit, with one-third of his claim against the estate. We do not think the claim for improvements is allowable, but the defendants should not pay increased rent caused by improvements for which they paid, and are denied compensation. *Tatum* v. *McLellan*, 56 Miss. 352. The taxes paid by the respondents, except for the year 1877, should be allowed. Taxes were assessed, and the land would have been sold if the taxes had not been paid, and the complainants must do equity.

*Reversed and remanded.*