SMITH, Presiding Justice, for the Court:
This is an appeal from a decree of the Chancery Court of Attala County entered at the suit of Nell Swales, setting aside, upon conditions to be stated, a conveyance by Joe Swales of a part of his homestead to his son and daughter-in-law, E. B. Swales and Doris Swales.
In 1968 Joe Swales conveyed a 1.7 acre tract to his son, E. B. Swales, and his son’s wife, Doris Swales. This land comprised a part of Joe Swales’ 144 acre homestead on *216 which he lived with his wife, Nell Swales. Nell Swales did not execute the conveyance. In 1972 the grantees reconveyed the property to Joe Swales who, on the same day, conveyed it to the Veterans Farm And Home Board. The purpose of these transactions was to enable the younger Swales to obtain financing for the purpose of constructing a home on the property. The loan was granted, the property was encumbered by a lien securing repayment to Veterans Farm And Home Board and E. B. Swales and Doris Swales constructed on the subject tract with the proceeds of the loan a dwelling in which thereafter they lived together until they separated in 1976.
It is without dispute that although the above described transactions were carried out with the full knowledge and consent of Nell Swales, and in fact what well may be described as her acquiescence therein, she was not a signatory to any of the instruments involved. Nell Swales herself testified that she would have signed the conveyance with her husband to her son and her son’s wife if she had been asked to do so but that no one had asked her. At another point she stated that she hadn’t signed because of “her arthritis,” but that it was her intent that title be so conveyed.
E. B. Swales and Doris Swales separated in 1976 and Doris Swales obtained a divorce from E. B. Swales in 1977. Joe Swales died on June 3, 1977 leaving all of his property to his widow, Nell Swales, and appointed her executrix of his will.
Following the death of Joe Swales, and her son’s divorce by Doris Swales, Nell Swa-les brought this suit against Doris Swales and her son E. B. Swales to set aside the above described 1968 conveyance upon the ground that it was void because of her failure to join her husband in its execution, the property having been part of their homestead.
No effort will be made to detail the multiplicity of pleadings filed by the several parties. E. B. Swales made no defense to his mother’s suit and it is charged that it was established that he was in collusion with her in order to deféat the claim of his former wife. On appeal he “adopts” his mother’s brief.
After a full evidentiary hearing, the chancellor found that the 1.7 acres had been part of the homestead of Joe Swales and his wife, Nell Swales, and that the deed from Joe Swales to Doris Swales and E. B. Swa-les in which Nell Swales had failed to join was void under the provisions of Mississippi Code Annotated section 85-3-21 (1972).
The chancellor held that the reconveyance of the land by the grantees to Joe Swales and Joe Swales’ conveyance to Veterans Farm And Home Board in connection with the loan transaction, in which Nell Swales did not join, failed for the same reason.
The chancellor found, however, that Nell Swales would be unjustly enriched if she were permitted to take the complete fee simple title to the improved property without reimbursing Doris Swales and E. B. Swales for the value of the dwelling and other improvements which they had made upon the land.
The court heard evidence and found that the value of the improvements was $36,900 and that the value of the unimproved land was $2,500. These findings are supported by the evidence. The chancellor found further that Nell Swales was entitled to rentals on the land with its improvements from 1973 to 1977 which was set at a total of $11,250. This finding also was supported by proof. It is undisputed that E. B. Swa-les and Doris Swales had paid taxes over the period amounting to $393.10 and that they had paid interest on the Veterans Farm And Home Board loan, the proceeds of which were used to construct the dwelling, amounting to $4,400.
Based upon the above findings, the chancellor awarded Nell Swales title to the property, and impressed the interests of Doris Swales and E. B. Swales with a lien in the amount of $14,341.46 as of September 15, 1977, in favor of Veterans Farm And Home Board. The award of the property to Nell Swales was made upon condition that she pay E. B. Swales and Doris Swales *217 $26,043.10. This figure represented the value of the improvements that they had placed upon the land in the amount of $36,900.00, plus $393.10 for taxes that had been paid, less $11,250.00 reasonable rent. Nell Swales was allowed three months to make the payment in default of which the decree provided that E. B. Swales and Doris Swales might purchase the property from Nell Swales for its unimproved value of $2,500.00. Nell Swales, however, made payment into the registry of the court one day before the deadline.
In the light of the incontrovertible fact that Nell Swales was fully cognizant at all times of what was being done and stood idly by for years, watching her son, E. B. Swales and his wife, Doris Swales, building their home upon the land within a few feet of her own home without protest or demurrer, we have concluded that the chancellor correctly adjusted the equities between the parties, having set aside the deed as having been an attempt to convey part of the homestead by one spouse by a deed in which the other spouse did not join. However, we think the chancellor erred in failing to give credit to E. B. Swales and Doris Swales for the $4,400.00 paid by them upon the construction loan from the proceeds of which the dwelling was built. This was a part of the cost of the improvements awarded to Nell Swales and on which she is to recover rent. If Nell Swales is to take the improved property and receive the rent on the improved property as distinguished from the unimproved 1.7 acres conveyed by Joe Swales, equity requires that she reimburse E. B. Swales and Doris Swales the cost of the improvements.
Doris Swales contends that the chancellor erred in awarding Nell Swales rent on the improved property and asserts that rent should have been allowed only on the unimproved 1.7 acres of land attempted to be conveyed by Joe Swales. In support of this view, Tatum v. McLellan, 56 Miss. 352 (Jan. Term, 1879), is cited, in which this Court said:
The appellant, Tatum, is not entitled to an allowance for his expenditures in making improvements on the land, but he should not be charged an increased rent, caused by the additions to the land, for which he is denied compensation. Justice will be done by charging Tatum with the rent which the land would have yielded if no improvements had been put on it, and it had been rented as it was without them. To the extent that the rent was increased by the expenditures of Tatum he should not be required to pay it.
However, at the same term the case of Miller v. Ingram, 56 Miss. 510 (Jan. Term, 1879) was decided, in which the Court noticed the Tatum decision and said:
The proposal of the plaintiff in error to prove an outstanding title, with which he had no connection, was rejected in accordance with several decisions of this court. Griffin v. Sheffield et al, 38 Miss. 359 [77 Am.Dec. 646]; Morgan et al v. Hazlehurst Lodge et al., 53 Miss. 665.
Plaintiffs below were entitled to the rent
*512
of the lot as * improved, and defendant was entitled to the value of his improvements. Code, sect. 1557.
In Tatum v. McClellan, ante 56 Miss. p. 351, a case in chancery, where Tatum was denied pay for improvements, we held that he should pay rent for the land as it would have been without the improvements. This was to prevent the injustice of holding him to an increased rent by reason of improvements for which he could not be allowed compensation. In the case at bar, the defendant obtained pay for improvements as an offset to the demand for rent. The law is, that improvements belong to the owner of the land; but the occupant in good faith, who, believing that he owns the land, makes permanent improvements on it, whereby its value is enhanced, before notice of the intention of the plaintiff to bring the action, is entitled to pay for his improvements thus made, to be applied first to the payment of rent, and, after-wards, for any balance to be a lien upon the land.
*218 The statute cited fixes the rights of parties in actions of ejectment. The plaintiff, recovering the land, is entitled to mesne profits, and the defendant, bringing himself within the statute, is entitled to pay for improvements; and thus complete justice is done between the parties. The successful plaintiff is to have the land and improvements, but is to pay for the latter.
Judgment affirmed.
While the Miller case deals with a case in ejectment, the principle announced is fair and equitable and was properly applied under the facts here.
The chancellor’s findings of fact are supported by the evidence and his conclusions of law are in accord with the authorities and represent a carefully studied and fair adjustment of the equities between the parties under the peculiar circumstances of this case. The decree appealed from will be affirmed in all respects except that Doris Swales and E. B. Swales shall be given an additional credit against the rental in the amount of $4,400.00 representing the interest they have paid on the construction loan obtained from Veterans Farm And Home Board. The decree recited that jurisdiction as to collateral matters (such as an adjustment of the awards) which might result following a decision by this Court on appeal were reserved by the chancery court.
The case will be remanded for the purpose only of making current and bringing into line the amounts and credits in accordance with this opinion.
There was no appeal by Veterans Farm and Home Board and no cross-appeal by Nell Swales.
AFFIRMED IN PART AND REVERSED IN PART AND REMANDED FOR FINAL ADJUSTMENT OF THE AMOUNTS INVOLVED TO DATE.
PATTERSON, C. J., ROBERTSON, P. J., and WALKER, BROOM, LEE, BOWLING and GOFER, JJ., concur.
SUGG, J., took no part.