William C. H. McKinney et al v. Andrew J. Adams.

[50 South. 474.]

1. Judgment. *Collateral attack. Definition.*

By "collateral attack" is meant any proceeding in which the integrity of a judgment is challenged, except in the action wherein the judgment is rendered, or by appeal, and except a suit to declare the judgment void *ab initio.* 2 Words and Phrases, pp. 1249, 1250.

2. Same. *Same. What constitutes. Code 1892, § 143.*

A suit in equity by an attachment creditor to annual a judgment by default, in a senior attachment, on the ground that the affidavit showing defendant's postoffice address or that plaintiff after diligent inquiry was unable to ascertain it, required by Code 1892, § 143, as the basis of a judgment on service by publication, had not been made, is not a collateral, but a direct, attack, in which a recital in the judgment that defendant had been legally summoned by publication may be contradicted.

3. Same. *Conclusiveness. Persons entitled to attack. Senior judgment assailed. Code 1892, § 143.*

A purchaser at a sale under the judgment in an attachment suit acquires the title of the defendant in attachment, and has the same right to file a bill to annul a judgment in a senior attachment, on the ground that the affidavit showing defendant's ad-

dress or that plaintiff after diligent inquiry was unable to ascertain it, required by Code 1892, § 143, as the basis of a judgment on service by publication, had not been made.

4. CHANCERY PLEADING AND PRACTICE. *Exhibits.* *Demurrer.*

The rule of pleading, under Code 1892, § 528, that, where there is a conflict between an allegation in the bill and a recital in an exhibit, the latter controls on demurrer, can be invoked only where the exhibit is made the basis of the relief sought.

FROM the chancery court of Sharkey county.

HON. JAMES STOWERS HICKS, Chancellor.

McKinney and others, appellants, were complainants in the court below; Adams, appellee, was defendant there. The facts are stated in the opinion of the court.

*Catchings & Catchings,* for appellants.

We will first consider the effect upon the judgment rendered in the *Adams case* by the failure to make the affidavit required by Code 1892, § 143. That section requires that before publication can be made in cases of attachment against persons residing out of the state, the creditor, his agent, or attorney, shall file with the clerk his affidavit if the affidavit for the attachment does not contain such statement, showing the postoffice of the defendant or that he has made diligent inquiry to ascertain it, without success; and if the postoffice shall be stated the clerk is required to send by mail to the defendant at his postoffice a copy of the notice, and he is required to make it appear to the court that he has done so, before judgment shall be rendered on publication of notice.

The bill alleges that the statute was not complied with in this particular, and that allegation of the bill is supported by the transcript of the proceedings in the Adams attachment suit which is filed with it as an exhibit. The failure to comply with the statute in this case makes the judgment rendered in the Adams attachment suit utterly null and void. This direct question was finally considered by this court in the case of

*Drysdale v. Biloxi Canning Co.,* 67 Miss. 534. In that case the two attachments by the same plaintiff were against a nonresident who was not personally served, and there was no affidavit made by plaintiff setting forth the defendant's postoffice address, nor any affidavit stating an inability to ascertain such address. Nevertheless judgments by default were rendered in the two cases and the lands of defendant sold by execution and bought by the plaintiff. The defendant in these attachment suits thereupon filed his bill in chancery praying that the deeds made under these judgments be cancelled as clouds upon his title. The chancery court dismissed the bill and an appeal was taken to this court. This court said:

"In the affidavit for attachment writ the plaintiff below had stated under oath that Drysdale, the defendant, was a nonresident, but neither in that affidavit nor elsewhere in the record does it appear that any showing was made as to his postoffice address in the state of his residence. The proviso to section 2437 (Code 1880) makes it imperative upon the attaching creditor to 'file with the proper officer his affidavit if the affidavit for the attachment does not contain such statement, showing the postoffice of the defendant or that he has made diligent inquiry to ascertain it without success;' and section 2472 (Code 1880) of the Code makes the provision just quoted applicable to suits in attachment before justices of the peace.

"The flagrant disregard of these plain statutory requirements designed to give a nonresident defendant notice of the pendency of an attachment suit against him must be held to vitiate and nullify all subsequent proceedings in the case. Without any further adjudications on this point (and there are several in our reports), it seems incredible almost that any sane suitor should begin proceedings under our attachment laws and hope to win in a legal contest in despite of his gross neglect of the simplest and plainest provisions of the statute on the subject of attachments. From the record as it appears here the appellant was entitled to have the relief prayed for in his bill."

This was clearly an adjudication that the failure to make the affidavit required rendered a judgment taken without it null and void, and it was also an adjudication that it was not merely an error which could be corrected only by appeal, but that the defendant in such proceedings when such a judgment was rendered might maintain his bill as a separate and independent proceeding to cancel deeds of conveyance made in pursuance of executions under such a judgment. This is no collateral attack, therefore, as claimed by the third ground of the demurrer. But it is a direct proceeding instituted for the purpose of having the judgment and the sale under it vacated and annulled. The appellants by virtue of the deed of conveyance to them under their judgment in their attachment proceedings, this judgment in the *Adams case* being null and void, stand as the grantees of Pfeifer. They are grantees *in invitim* it is true, but they are nevertheless grantees. Under this decision of this court Pfeifer himself might have filed such a bill, and so these plaintiffs being his grantees can file such a bill.

This is a sufficient answer to the fourth and fifth grounds of demurrer. *Foster v. Simmons,* 40 Miss. 585; *Ingersol v. Ingersol,* 42 Miss. 585; *Moore v. Summerfield,* 80 Miss. 323; *Biggs v. Ingersol,* 28 South. 825.

It must be quite clear to the court that the bill was not defective for want of parties.

The attachment sued out at the instance of Mrs. S. A. Adams was void and the levy of it created no lien and the judgment rendered in pursuance of it is void and the sale made thereunder was void for another reason which is perfectly patent. Code 1892, § 134, gives the form of the writ of attachment which provides that the writ shall recite the affidavit. In other words it requires that the affidavit shall be made a part of the writ and incorporated in it. The whole proceeding by attachment being statutory the requirements of the statute must be strictly complied with.

Code 1892, § 134, after prescribing the form of the attach-

ment writ, declares that "an attachment shall not be quashed or abated for want of form if the substantial matters expressed in the foregoing precedent be contained therein." We submit that the writ in this case does not contain "the substantial matters expressed in the foregoing precedent" for the reason that it wholly omits one of the grounds of the attachment. Even, however, if the court might have allowed the writ to be amended by inserting this amended ground, upon the objection being made to it by the defendant in attachment, yet the court could not allow an amendment of the writ which would cut off the intermediate rights acquired by third persons. The junior attaching creditor could not be deprived of his rights by the allowance of an amendment which would make valid a prior writ of attachment which without such amendment was invalid. That an attachment cannot be permitted to cut off the intermediate rights acquired by third persons has been many times decided. *Putnam v. Hall,* 3 Pick. 445; *Bingham v. Este,* 2 Pick. 420; *Willis v. Croaker,* 1 Pick. 204; *Grennault v. Farmers Bank,* 2 Dougl. (Mich.) 498; *Garvin v. Legery,* 61 N. H. 153; *Dahill v. Laker,* 1 Handy (Ohio) 574; *Whitney v. Burnette,* 15 Wis. 61.

The judgment in the *Adams case* we think is void for this additional reason. The affidavit is to the effect that Pfeifer was indebted to Mrs. Adams in the sum of $450, and the writ makes the same recital, and the bond given is based upon an indebtedness of that amount. This affidavit was made on December 28, 1897, and of course related to the indebtedness of Pfeifer at that time. The writ bears date of January 3, 1898, and the levy on the land was made on that date, and the levy on the wagon made on that date. The declaration in the *Adams case* was filed on July 26, 1898, and alleges that Pfeifer was indebted to Mrs. Adams on February 7, 1898, in the sum of $583.73. It will be seen that the declaration departs very widely from the affidavit. The amount alleged in the declaration to be due is very much larger than the amount claimed in the affidavit to be due, and the indebtedness described in the declaration was alleged to be the

indebtedness as it appeared on February 3, 1898, while the indebtedness described in the affidavit is said to have been an indebtedness existing on January 3, 1898.     This is such a departure from the affidavit as amounts in law to an abandonment by Mrs. Adams of her attachment.

In the case of *Ligon v. Bishop,* 43 Miss. 532, this court said: "The affidavit, writ and declaration should correspond."     This case was quoted with approval in *Hambrick v. Wilkins,* 65 Miss. 22, in which the court said: "We assent to the proposition advanced by appellant that a plaintiff may not attach for one cause of action and having sustained his writ declare for another."

The case in 43 Mississippi, was cited in support of this position.     In the case of *Tunnison v. Field,* 21 Ill. 108, the court said: "In a proceeding by attachment the declaration must be limited to the cause of action specified in the affidavit upon which the proceeding is based."

The case of *Moore et al. v. Corley et al.,* 16 S. W. 787, decided in 1890, by the court of appeals of Texas, is exactly in point. In that case an attachment had been sued out for $508.82.     The declaration filed by the plaintiffs in attachment was based upon an account for merchandise sold and delivered, claiming a balance of $488.44.     A motion was made to quash the attachment proceedings because of the variance between the amount sued for and the amount for which the attachment issued.     This motion was sustained and in the court of appeals is was assigned for error that the trial court erred in sustaining the motion.     The court said:

"Plaintiffs in error assign the quashing of the attachment proceeding as error.     We think the proceeding was properly quashed upon the ground that there is a material variance between the amount of the debt sued for and that claimed in the affidavit for the writ.     The amount sued for is $488.44, while the amount stated in the affidavit and writ is $508.82.     This variance is fatal to the validity of the proceeding."

The variance being "fatal" the court held of course that the

attachment proceedings were a nullity and could no longer be maintained and prosecuted. Nothing was left to the plaintiff except his ordinary suit for an ordinary suit. A junior attaching creditor, where there is such a fatal variance between the amount sued for in the plaintiff's declaration and the amount stated in his affidavit and writ for an attachment has a right to proceed as though no attachment had been sued at all, and by attaching he acquires a superior lien.

If any application at all was made it does not appear in the record of the Adams suit. It clearly was not necessary that the court should make an order directing a publication to be made. Code 1892, § 143, made it the duty of the clerk of the court to make the publication without any order from the court requiring him to do so. It appears, however, from the bill filed by appellants that no step was taken in the cause from the July term, 1898, until publication was made in May and June, 1902. It also appears from the record as well as from the bill of complaint that no further action was taken until the March term, 1905, when judgment by default was entered. In other words, it appears that this attachment was sued out in December, 1897, that no publication was made until May and June, 1902, and that no judgment was taken until the March term, 1905. In the meantime on August 12, 1901, the appellant McKinney sued out his attachment and obtained a judgment by default on September 26, 1901, and had a sale of the lands in controversy made under it. All this was done in the *McKinney case* before publication even had been made in the *Adams case.* We respectfully submit that under the circumstances, insofar as the appellants are concerned at least, it should be held that the Adams attachment was abandoned and that it lost its priority.

*Green & Green* and *McLaurin & Clements,* for appellee.
Complainants do not show any title in themselves.

1. The averments of the bill do not comply with Code 1906, § 551, as interpreted in *Long v. Stanley,* 79 Miss. 298.

There is no averment deraigning the title of complainant from the government down, nor is there any averment that the source of defendant's title and that of complainant's is common. It is averred that Pfeifer "was in the year 1896, and part of 1897, a resident of the fourth district of said county in which said lands are situated, and was the owner of said lands;" and it is averred that complainant claims title through an attachment proceeding seeking to subject Pfeifer's title.   It is also averred that there was an attachment suit instituted by Mrs. Adams against Pfeifer, and that defendants purchased the title sold under that proceeding, but it is nowhere averred that that is the only claim of title of the defendants, nor that the parties claimed from a common source.

2. Complainants show no title in themselves.   The bill does not aver any compliance with Code 1892, § 3499, by the filing of the transcript of the proceedings in the justice court, including a copy of the execution, and the officer's return on it, with the conveyance made by the officer in the chancery clerk's office, nor any record of the conveyance in the chancery clerk's office, and section 3499 expressly declares that the filing of such transcripts and conveyance for record in the chancery clerk's office is necessary to vest title in the purchaser.

There is no pretence that any such transcript was ever filed and the bill avers that the original deed was not recorded nor does it aver that the substituted deed was ever recorded.

There can be no discontinuance of a suit even though there is no formal continuance entered.   *Insurance Co. v. Francis,* 52 Miss. 457.

In the absence of the bar of the statute of limitations, staleness or laches is no defense.   *Taylor v. Board,* 70 Miss. 87; *Hill v. Nash,* 73 Miss. 861; *Houston v. Building Association,* 80 Miss. 42.

The averment that plaintiff, nor her counsel in the attachment suit against Pfeifer, did not make the affidavit provided by Code 1892, § 143, is without merit.   The allegation of the bill

is controlled by the exhibit. *House v. Gamble*, 78 Miss. 259; *McNeill v. Lee*, 79 Miss. 455; *Weir v. Jones*, 84 Miss. 610.

The record does not purport to contain all of the record in the attachment suit. The clerk making his transcript recites that it is an "abstract" of the record. There is exhibited, however, the judgment, and this recites that "it appearing to the satisfaction of the court, from the sheriff's return that the defendant, J. A. Pfeifer could not be found, and it further appearing to the satisfaction of the court that said defendant J. A. Pfeifer has been duly and legally summoned in this case by legal publication shown by the proof of publication legally made and filed in this case, to appear and plead to this action of attachment."

This recital of the judgment of the finding of jurisdictional facts is conclusive in this proceeding, a collateral attack. *Cannon v. Cooper*, 39 Miss. 789. There the court adjudicated the jurisdictional facts and it was held "If the record shows that the court did adjudge that a fact existed, the existence of which was essential to the courts entertaining jurisdiction over a party, that the record is conclusive in every collateral proceeding, in which the judgment may be impeached." *Cason v. Cason*, 31 Miss. 578.

See also *McWilliams v. Norfleet*, 60 Miss. 987, wherein at pages 994 and 995 it is said: "Where the power exists and is exercised, it is to be presumed that the facts upon which the court acted were sufficiently established." Citing cases.

It is to be particularly noted that the record of the attachment suit which is made an exhibit to the bill, does not purport to be a full or complete transcript of the record, and that it does not contain the evidence upon which the court found the jurisdictional fact.

"A record must be tried by itself and imports absolute verity; if a party desires to controvert it, the record alone must be relied upon for that purpose, by the introduction of a more perfect record" and parol evidence is incompetent. *Mandeville v. Stockett*, 28 Miss. 398; *Murrah v. State*, 51 Miss. 652.

In *Ames v. Williams*, 72 Miss. 761, it was held that "having general jurisdiction, its decrees appointing the clerk guardian cannot be collaterally attacked by showing that the minor did not live within the county where the court was held, and this although the record is silent as to the residence of the minor. This can only be done by showing that under no circumstances could the court have exercised jurisdiction. *Farrar v. Clark*, 29 Miss. 195, overruled."

WHITFIELD, C. J., delivered the opinion of the court.

The facts in this case are as follows: On June 26, 1905, the appellants filed a bill of complaint in the chancery court of Sharkey county, Miss., against A. J. Adams, a citizen and resident of that county. The bill alleged: That on August 12, 1901, the appellant McKinney sued out an attachment writ in a justice court against J. A. Pfeifer as a nonresident, and that the writ was levied on all that part of the S. E. ¼ of the S. E. ¼ of section 7, township 13, range 5, lying west of Conner Bayou, containing 30 acres, more or less, and on all that part of the N. E. ¼ of the N. E. ¼ of section 18, same township and range, lying west of said bayou, containing 16 acres, more or less. That the attachment was regularly prosecuted to judgment, the proceedings all being regular, and that under a judgment by default rendered September 26, 1901, these lands were sold; the appellant McKinney becoming purchaser. That at McKinney's request the sheriff executed a deed to him and to A. L. Brown, conveying the lands to them as tenants in common. That the deed of conveyance to them was not recorded, but was accidentally destroyed by fire January 20, 1904. That the defendant, Adams, had knowledge of the sale, and that his attorneys were present when it was made. That on June 28, 1904, they filed a petition in the said chancery court, praying for the restoration of the destroyed deed, and that on July 27, 1904, a decree was rendered accordingly. That Mrs. S. A. Adams, who was the wife of the appellee, A. J. Adams, on January 3, 1898,

sued out an attachment against the said Pfeifer as a nonresident of the state of Mississippi, which was on the same day levied on said lands. That on July 26, 1898, Mrs. Adams obtained an order from the circuit court of Sharkey county for publication against Pfeifer as a nonresident. That no further step, was taken until 1902, when in May and June of that year publication was made returnable to the July term, 1902, of the circuit court. That from said last-mentioned date no further action was taken until March term, 1905, when judgment by default was entered for the sum claimed in the suit in favor of appellee, A. J. Adams, who prosecuted the suit as the administrator of S. A. Adams, his deceased wife, who had died in April, 1904; the said A. J. Adams having procured letters of administration upon her estate May 13, 1904. That under a writ of *venditioni exponas* the said lands were offered for sale at public outcry to satisfy said judgment, and that complainants were present and gave public notice to the sheriff and all others present that they were the owners of said lands under their purchase, and that the judgment under which the sheriff was offered the lands for sale was invalid and ineffective to pass title. That notwithstanding this the sheriff made sale of the lands and struck them off to appellee, A. J. Adams, for $50, and made him a deed therefor. That the lands were sold March 4, 1901, for the taxes of 1900, and purchased by J. W. Lyles, and that complainants, after having purchased the lands under the judgment in favor of the appellee, McKinney, redeemed the lands from this sale February 7, 1902, paying out for that purpose $13.90, and that from that time to the filing of the bill complainants had regularly paid all annual taxes accruing thereon. That the said lands had greatly increased in value since they were purchased by complainants in December, 1901. That the facts stated show that the attachment suit instituted by Mrs. S. A. Adams had been abandoned long prior to her death in April, 1904. That the attempt of the appellee, A. J. Adams, to revive and prosecute the same to judgment was contrary to equity. That,

even if there was no intentional deliberate abandonment by Mrs. Adams of her suit, her laches should prevent her or her heirs from acquiring any right to the detriment of complainants. Complainants made as an exhibit to their bill the entire record of the attachment suit of S. A. Adams, and of its revival, and all proceedings thereunder. That the judgment in the Adams suit was utterly void, and that the sale thereunder passed no title to the appellee, Adams, for the reason that there was no affidavit made by plaintiff in said attachment suit, or by her agent or attorney, as required by section 143 of the Annotated Code of 1892, showing the postoffice of said Pfeifer, or that diligent inquiry had been made to ascertain it without success. That, aside from the question of laches, this failure to follow the statute rendered the whole judgment nugatory and void, and that the deed by the sheriff to appellee, Adams, should be canceled, and that the appellee should be enjoined from claiming the lands.

On July 24, 1905, A. J. Adams filed a demurrer, which was sustained. An amended bill was duly filed, which set out the matters in the original bill and alleged several matters in addition, not necessary to be stated in our view of the case. The amended bill averred, amongst other things, that Pfeifer, the defendant in the attachment, had no actual or constructive notice of the attachment suit of Adams for the reason that the plaintiff, Adams, did not make and file the affidavit required by section 143, Ann. Code 1892, showing defendant's postoffice address, or that the plaintiff, after diligent inquiry, was unable to ascertain it; that the said Pfeifer was not represented by an attorney, or any one else; and that the court was without jurisdiction to render a judgment against him, which judgment was by default. A demurrer was filed to this amended bill, and it was sustained, and the complainant allowed to amend again by making A. J. Adams and his four chidren parties defendant; Mrs. S. A. Adams having died in 1904. A demurrer was again filed, and again sustained, and the bill dismissed. In the judgment in at-

tachment in favor of Adams against Pfeifer, it was recited that "the defendant had been duly and legally summoned in this case by legal publication." The prayer of this bill was that this judgment should be declared nugatory and wholly void, on the ground that the plaintiff in the Adams attachment had not made the affidavit which was the basis of a judgment by default on publication, as required by section 143, Ann. Code 1892, and for the cancellation, consequently, of the deed made by the sheriff to the defendant, and that the defendant should be forever enjoined from claiming the lands under said judgment and deed. It will thus be seen that the chief relief prayed for in this bill was the annulment of the judgment by default in favor of Adams in the attachment suit on the grounds stated, from which, of course, the rest of the relief prayed for would follow. This bill was filed, not by Pfeifer, the defendant in the attachment, but by McKinney, the junior attaching creditor and purchaser under the judgment and attachment in favor of *McKinney v. Pfeifer.* The chief ground of assault on this judgment is that the affidavit required by section 143, Ann. Code, 1892, as the basis for a judgment on constructive service by publication, was not in truth and in fact made, and that the party had not, as that statute required, made it appear that such an affidavit had been made. It was distinctly held in *Drysdale v. Biloxi Canning Co.,* 67 Miss. 539, 7 South. 541, that the failure to file this affidavit rendered the whole attachment proceeding absolutely null and void. That case was also the case of a judgment in attachment by default, without such affidavit having been made. It may be said, in short, that this case and that are on all fours, as to the facts, except in two particulars: First, that bill was filed by Drysdale, the defendant in the attachment, and this is filed by McKinney, a purchaser of the land attached, at the sale under the attachment, he being a junior attaching creditor and the purchaser of the title of defendant at the said sale; and, second, it does not appear in the statement of the case cited, that there was any recitation in the record that the defendant had been sum-

moned by a publication duly and legally made as required by law.

The main ground of defense in this case is that the recitation in this judgment is conclusive against collateral attack, and that this bill is a collateral attack. It becomes very important, therefore, to determine whether this is a collateral or direct attack on the judgment. In Words and Phrases, vol. 2, at pages 1249 and 1250, "collateral attack" is thus defined: "By a 'collateral attack' is meant every proceeding in which the integrity of the judgment is challenged, except those made in the action wherein the judgment is rendered, or by appeals, and except suits brought to obtain decrees declaring judgment to be void *ab initio*. *Burke v. Interstate Savings & Loan Ass'n,* 25 Mont. 315, 64 Pac. 879, 881, 87 Am. St. Rep. 416. . . . A collateral attack on a judgment is any proceeding to impeach a judgment which is not instituted for the express purpose of annulling, correcting, or modifying such judgment, or enjoining its execution. *Morrill v. Morrill,* 20 Or. 96, 25 Pac. 362, 364, 11 L. R. A. 155, 23 Am. St. Rep. 95; *Meinert v. Harder,* 39 Or. 609, 65 Pac. 1056, 1058; *Smith v. Morrill,* 12 Colo. App. 233, 55 Pac. 824, 826; *Cochrane v. Parker,* 12 Colo. App. 169, 54 Pac. 1027, 1029; *Harler v. Shull,* 17 Colo. App. 162, 67 Pac. 911, 912. Hence a proceeding to enjoin the enforcement of a judgment because of its invalidity or want of service of summons is not a collateral attack. *Smith v. Morrill,* 12 Colo. App. 233, 55 Pac. 824, 826. . . . When the validity of a record attacked is directly put in issue by the pleadings of the party attacking it by proper averment, the attack is direct, and not collateral; but when there are no proper averments attacking the record, although its validity is drawn in the issue of the case, the attack is collateral. *Walker v. Goldsmith,* 14 Or. 125, 12 Pac. 537, 553. A direct attack upon a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of the same, in a proceeding instituted for that purpose, such as a motion for a rehearing, an appeal, some form of writ of error, a bill of re-

view, an injunction to restrain its execution, etc.; while a collateral attack is an attempt to avoid its binding force in a proceeding not instituted for one of the purposes aforesaid, etc. . .

The prayer of a complaint asked that a guardian's release of certain mortgages on property belonging to a ward should be set aside and the mortgage foreclosed, and for general relief. The allegations of the complaint attacked the probate proceedings and acts of the guardian and a sale of the property made by him as fraudulent, which was denied by defendant. The defendant contended that, as the suit was for the foreclosure of the mort-' gage, the validity of the probate proceedings and the acts of the guardian could not be questioned, as it would be a collateral attack thereon; but it was held that as the complaint attacked directly the probate proceedings and the guardian's deeds thereunder, and prayed for general relief in addition to the foreclosure of the mortgage, such attack was not a collateral attack. *Dormitzer v. German Savings & Loan Soc.,* 23 Wash. 132, 62 Pac. 862, 881." See, also, *Morrill v. Morrill,* 20 Or. 96, 25 Pac. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95, and notes.

Under this definition, which we think is correct, this bill is not a collateral, but a direct attack on the judgment in this case so far as the nature and character of the bill is concerned. But the cases in this court lay down the same doctrine precisely in the same character of case. In *Crawford v. Redus,* 54 Miss. 700, a final account was filed by the executor, Redus, and a judgment rendered against Mrs. Crawford, one of the heirs and legatees. In the judgment it was recited that "all persons interested in said estate have been, either by citation regularly served and returned or by publication regularly made and proved, notified to appear." At a subsequent term of the court, Mrs. Crawford presented a petition assailing this judgment as void, because no service of process, either actual or constructive, had ever been made on her; and this court held, reversing the court below, that this was a direct proceeding, in which the recital quoted was only *prima facie* true, and that the falsity of that re-

cital could be shown by either the record or parol proof. The court observed that the effort to overthrow it by parol proof would be exceedingly difficult, but that that difficulty in no way affected "the right, by a direct proceeding, to show that in point of fact a decree had been rendered without judisdiction of the person."

In *Sivley v. Summers,* 57 Miss. 712, this *Redus case* was assailed, and directly reaffirmed by the court in a masterly opinion by Justice CAMPBELL. In this case a decree was rendered upon a petition by Sivley, who had been appointed administrator, declaring the estate insolvent and ordering it sold, etc.; there being no process for Robert D. Osborn and his wife, two of the defendants, as was apparent from the record. That decree was rendered November 18, 1872, reciting that due proof of publication and service of process had been made on all the parties. When the lands were sold, the widow's dower was set apart to her, and when she died, in 1876, the purchasers at the sale under the insolvent decree demanded possession of the lands, in which they had purchased the reversion of the heirs of Summers, the decedent, who was still in possession. These heirs refused to surrender, and filed, in 1877, their original bill in the chancery court against Sivley and Drone, the purchasers, to vacate the decree and the administrator's deed to Drone, who bought at the sale, and the deed from him to Sivley, upon the grounds, amongst others, that there was no service of process on R. D. Osborn and his wife. It will be observed that the prayer of this bill was exactly the prayer of the bill in this case. The court distinctly held that that bill constituted a direct attack, and that consequently the recital that service had been had was only *prima facie* true, and could be overthrown. The court said:

"The recitals in the decree for the sale of the land, as to service of process and proof of publication, are *prima facie* true. In this proceeding they are not conclusive. In a collateral proceeding these recitals would be conclusive, because, in such case,

they could not be shown to be untrue, except by the record. Not being liable to attack in a collateral proceeding, their *prima facie* character would amount to conclusiveness; but in this proceeding the recitals of the decree may be contradicted, and, if shown to be untrue, the decree resting upon them for its validity should be opened. It is not to be tolerated that, because the record may show the concurrence of those facts essential to give the court jurisdiction of a party, he may not, in a proper proceeding in the same court and against the other parties, show its falsity. It is not to be assumed that a record is false, and yet it may be, and sometimes is, and, when shown to be so in a proper proceeding and between proper parties, the truth must prevail, though the record falls. If, in its fall, no one is harmed, except the one who procured a false record to be made, or those in his shoes with notice, no wrong is done, and right prevails. We acted on this doctrine in *Crawford v. Redus,* 54 Miss. 700, which is said by counsel to be at variance with all the previous decisions of this court on this subject. We do not agree with counsel as to former adjudications. As we understand them, they announce the correct doctrines, to which we steadfastly adhere, that every presumption is to be indulged in favor of the record of a court of general jurisdiction, and that it cannot be controverted in a collateral proceeding. Want of jurisdiction is as fatal to the proceedings of one court as to those of another. No court can render a valid judgment without jurisdiction. It is said that 'it is not to be assumed that a court of general jurisdiction has in any case proceeded to adjudge upon matters over which it had no authority; and its jurisdiction is to be presumed, whether there are recitals in its records to show it or not.' Cooley, Const. Lim. 406. It is a presumption founded on an assumption. But suppose, in a direct proceeding for that purpose, the fact is demonstrated that this assumption is not correct; what becomes of the presumption? We say that every presumption is to be indulged in favor of the jurisdiction of courts of record, and that their recitals are *prima facie* true.

and they cannot be questioned in a collateral proceeding; but when directly questioned, in a proper proceeding for that purpose, the truth must prevail, whether the court be of the one grade or the other in the classification of courts. We adhere to *Crawford v. Redus.*"

In *Duncan v. Gerdine,* 59 Miss. 550, a judgment had been rendered in favor of the testator of the appellees against Duncan in the circuit court. Mrs. Duncan filed a bill in the chancery court, assailing this judgment on the ground that it had no jurisdiction to render the judgment, because summons was never served upon her, and asking to enjoin the judgment. It will be observed that this bill is identical with the bill in this case, to wit, a bill seeking to annul and vacate the judgments at law, because of the want of proper service of process on one of the parties, and the court held that that was a direct attack, saying:

"First, is it permissible for Mrs. Duncan in this proceeding to attack the validity of the judgment against her, by showing that the return of the officer on the writ was false, and that in fact she never had been notified in any manner of the pendency of the suit? And, if this question be determined in her favor, second, has she introduced sufficient evidence to overturn the presumption which exists in favor of the truth of the return as made by the officer? We consider the first of these questions as already settled in this state by the former decisions in the cases of *Crawford v. Redus,* 54 Miss. 700, and *Sivley v. Summers,* 57 Miss. 712; but, if it be not, we have no hestitation or doubt in deciding it in the affirmative. The rule that a record is conclusive evidence of its own verity is not applicable in a direct proceeding instituted for the purpose of showing its falsity as to a matter which, if false, shows that the court pronouncing it as a judgment had no jurisdiction of the person of the defendant, and, consequently, that what purports to be a record is in fact no record at all. No consideration of public policy requires that one guilty of no negligence should be concluded by *ex parte* proceedings, of which he had no notice, because of a declaration

made by the court, at the instance of his adversary, that he had such notice. If in fact Mrs. Duncan was not served with the process of the court, by what rule of law or reason shall she be required to submit to have her property sold for the satisfaction of that which is only the pretense of a judgment? It is not sufficient to reply that the court which rendered the judgment has adjudicated the fact that she was served with the summons; for, if the summons was not served, the court had no power to adjudicate that or any other fact against her, and the whole fabric falls, unless she is forced, in the outset, to admit as true that which she avers to be false, and that, too, when upon its truth depends her liability to its burden, and upon its falsity her right to relief. We reiterate what was said in *Sivley v. Summers,* that, in direct proceedings instituted for the purpose of testing the validity of the judgment, 'the truth must prevail, though the record falls.' Relief may be sought through the interposition of the chancery court. Freeman on Judgments, § 495."

It is not possible for language to be more emphatic in the statement of the principle than the language of this court in the case of *Gerdine v. Duncan* and *Sivley v. Summers.* No room whatever is left for doubt that this court has held, expressly, that a bill of this character constitutes a direct, and not a collateral, attack. See, also, Am. Ency. of Law, vol. 117, p. 848; Cyc. vol. 23, p. 1062; *Sadler v. Prairie Lodge,* 59 Miss. 574, where the court said: "Jurisdiction of the person is as essential as jurisdiction over the subject-matter, and no court can by any recital deprive a party of the right to show, in a direct proceeding undertaken for the purpose, that he is about to be deprived of his property without having had an opportunity to be heard."

Learned counsel for appellee cite a number of cases as to the binding force of the recital in the judgment, but a careful examination of each of these cases shows that they are all cases of collateral attack. The cases of *Cocks v. Simmons,* 57 Miss. 183, *Cason v. Cason,* 31 Miss. 578, *Ames v. Williams,* 72 Miss. 760,

17 South. 762, and all the other cases on this point cited by the learned counsel for appellee, are cases of collateral attack. So far, therefore, as the nature of attack as disclosed by the character of the bill is concerned, this is manifestly a direct attack.

But learned counsel for appellee say that this is not a direct attack for another reason, to wit, that this bill was not filed by the defendant in the attachment, as was true in the case of *Drysdale v. Biloxi·Canning Co.,* but, as they say, by a stranger. It must be remembered that the judgment in the case of *Adams v. Pfeifer* is not a personal judgment against Pfeifer, but a judgment condemning the land, which has been attached, to sale to satisfy the debt adjudged to be due by Pfeifer to Adams. The appellants purchased this land so condemned to be sold at an execution sale made under the judgment which McKinney had obtained against Pfeifer. By such purchase the appellants acquired all title to the land which Pfeifer himself had held, and must stand directly in his shoes as regards the title. We are clearly of the opinion that, under these circumstances the appellants, who acquired whatever title Pfeifer had to this land, thus condemned by this proceeding *in rem,* had the same right as to the filing of this bill that Pfeifer himself would have had. They are not strangers in any proper sense. Since, therefore, this is a direct attack, the recitation in the judgment was only *prima facie* true, and it was perfectly competent to show its falsity by testimony to be introduced. • As well said in *Siwley v. Summers, supra,* on collateral attack as a rule it is only the record which is assailed which is introduced, and, since there can be nothing but the record introduced on such an attack, the recital in the record is conclusive; but on direct attack, the falsity of the recital as to the service of process in the judgment may be shown by any competent testimony.

The last proposition of learned counsel for appellee on this point is that there is a direct conflict between this recital in the exhibit and the allegation in the bill, and that consequently, under the cases of *House v. Gumble,* 78 Miss. 259, 29 South. 71,

*McNeill v. Lee,* 79 Miss. 455, 30 South. 821, and *Weir v. Jones,* 84 Miss. 610, 37 South. 128, on demurrer, the recital in the exhibit must prevail, and for that reason alone the demurrer was properly sustained.   The opinion in *McNeill v. Lee, supra,* is far too broad.   The very purpose of appellant's bill is to have declared null and void this judgment and the conveyances under it, upon the express ground that the court had no jurisdiction over the person of the defendant.   The rule invoked as to exhibits controlling on demurrer, in case of a conflict in the recital as to the existence of a fact between the exhibit and the bill, meant nothing more than that such exhibit should so control, where a complainant bases the relief which he seeks upon the written exhibit annexed to the bill.   In other words, an allegation in a bill describing a writing and characterizing a writing as having a certain character or being a certain thing, would not control the court when, looking at the writing itself, it shows it is not the kind of writing so described; or, when there is a fact stated in the bill, and a written exhibit annexed to the bill, which exhibit is the basis and foundation of the relief sought, states that fact to be otherwise, then, of course, the exhibit will control on demurrer under the statute.   There is no contradiction between this bill and this recital in this exhibit, when properly considered.   All that section 528, Ann. Code 1892, meant was that exhibits should be considered on demurrer as if copied in bill, contrary to the former practice.   In the case of *House v. Gumble, supra,* for instance, the assessment roll was the basis of relief claimed in the bill, and that assessment roll showed the allegation and fact in the bill to be untrue.   There was a clear case for the application of the rule, although, so far as the principle is concerned, it is true, as said by learned counsel for appellant, that in that case the rules should not have been referred to, since the case was on final hearing.   It was a mistaken view in the case of *McNeill v. Lee, supra,* to apply this rule as appropriate there.   In that case a bill was filed to vacate a sale made by a trustee, on the ground, as alleged, that no default had been

made, and hence the trustee had no power to sell. The deed of conveyance by the trustee was made an exhibit to the bill, and it recited that default had occurred. The court incorrectly held in that case that the recital in the deed was enough to overthrow the allegation in the bill. This is conclusively shown to be erroneous by the reflection that if the bill had contained the allegation that there had been no default, and the trustee's deed had not been made an exhibit, the recitals contained in the trustee's deed would have been offered in evidence with the deed, and, of course, if the complainant could show in the evidence that the recital was false, the recital would fall, and the truth would prevail.

We say this much in explanation of the case of *McNeill v. Lee,* to show that the rule of pleading under the statute as it now exists is only to be made in those cases where the exhibit is made the very basis of the relief prayed for, and there then arises a contradiction between the recital in the exhibit and the allegations of the bill as to some essential fact. This is not the case here. No relief is prayed for bottomed on this recital. On the contrary, the bill assails the recitals set out in the exhibit as false in a direct proceeding as shown. For the reason, therefore, that this bill is a direct attack, praying the annulment of this judgment as void for want of jurisdiction because of the failure to file the affidavit required, and is a direct proceeding, therefore, to that end, though not made by the defendant, but made by one who was a purchaser of the land, the title to which is involved under a judgment against the defendant in attachment, it is clear that the court erred in sustaining the demurrer.

The decree is reversed, demurrer overruled, and cause remanded for answer within thirty days from filing of mandate in court below.

*Reversed.*