## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01547-COA

OPHELIA RAY                                                                                      APPELLANT

v.

O'POSSUM RIDGE FARMS AND LAKELAND                                         APPELLEES
FARMS, LLC

DATE OF JUDGMENT:                 10/20/2017
TRIAL JUDGE:                              HON. MILLS E. BARBEE
COURT FROM WHICH APPEALED:     WASHINGTON COUNTY CHANCERY
                                                    COURT
ATTORNEY FOR APPELLANT:          RENETHA LATRICE FRIESON
ATTORNEYS FOR APPELLEES:         ROBERT N. WARRINGTON
                                                    ALEXANDRA HUTTON OGLESBY
NATURE OF THE CASE:                 CIVIL - REAL PROPERTY
DISPOSITION:                             REVERSED AND RENDERED - 12/03/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     This case arose from O'Possum Ridge Farms ("O'Possum Ridge") and Lakeland

Farms LLC's ("Lakeland") complaint to confirm and quiet title, which sought to change the

Washington County Chancery Court's 2003 order conveying property to Irvin I. Pogue's

("Irvin") wife, Billie Sanders Pogue ("Billie"), as his sole beneficiary. Because the collateral

attack on Irvin's will was improper, we reverse and render the chancellor's judgment.

### FACTS AND PROCEDURAL HISTORY

¶2.     On January 22, 2003, Irvin and O'Possum Ridge entered into a contract for the sale

of approximately 295 acres of land in Washington County ("the subject property"). Under

the contract, O'Possum Ridge agreed to pay $30,000 at closing and to execute a promissory note in the amount of $278,849.52 secured by a deed of trust on the subject property. The contract also provided that O'Possum Ridge would take possession of the property upon closing.[1]

¶3.     Shortly thereafter, on February 8, 2003, Irvin died, and his will was probated in the Washington County Chancery Court. In a decree dated July 14, 2003, the court noted that no claims were probated against Irvin's estate, and the court granted the executrix, Billie, the authority to convey the subject property to herself as beneficiary of the will. The final order closing the estate was titled "Decree Approving Final Accounting And Discharge of Executor" in cause number 030208.

¶4.     Subsequently, on August 20, 2003, O'Possum Ridge executed a promissory note to Billie, which was secured by a deed of trust on the subject property for its purchase. Billie was the beneficiary of the deed of trust. The promissory note was payable in fourteen annual installments of $30,000. And on August 28, 2003, Billie "sold, conveyed, and warranted all rights, title, and interest" in the subject property to O'Possum Ridge.[2]

¶5.     Approximately five years later, in December 2008, O'Possum Ridge conveyed part of the subject property to New Lakeland Farms. And in December 2012, New Lakeland Farms conveyed the land to Lakeland.

---

[1] The parties agreed that $50,000 of the sale price would be attributed to the residence on the subject property and the surrounding two acres. The contract provided that Irvin and Billie would retain the right to occupy the residence during their lifetimes. Then O'Possum Ridge would gain possession of the residential premises.

[2] The warranty deed included an additional 10.34 acres.

¶6. In June 2012, Billie died. According to her will, her estate was to pass to Harvey Tackett Jr. as trustee for The Anne Ramsey Pogue Trust for her benefit during her lifetime. Anne was Irvin and Billie's daughter. Billie's will further provided that upon Anne's death, the estate would pass to Ophelia Ray (Billie's maid) and James Harrell.[3] However, Anne predeceased Billie, so in January 2013, the chancery court entered a decree conveying the promissory note, deed of trust, and remaining payments due thereunder to Ray. The decree was entered in cause number 20120990. The chancellor noted that the beneficiaries of Billie's will were Ray and Harrell and explained that "[t]he beneficiaries have agreed that this asset shall become the property of Ophelia Ray."

¶7. O'Possum Ridge stated that, at some point, it had sought financing using part of the subject property as collateral and became concerned about a potential cloud on the property's title. According to O'Possum Ridge and Lakeland, Irvin's will from the 2003 probate action provided that Billie would receive any portion of his estate that exceeded the unified credit exemption.[4] Otherwise, the estate would pass to the Irvin I. Pogue Residuary Trust ("the Trust"). Anne was the initial beneficiary of the Trust, but upon her death, the assets of the Trust were to be distributed to the following residuary beneficiaries: Sarah Dees Marble (Irvin and Billie's niece), Avon United Methodist Church, March of Dimes Foundation, Mississippi State University, Woods Junior College, and French Camp Academy ("the

---

[3] The record does not appear to indicate how Billie and Harrell knew each other.

[4] The unified credit exemption is the maximum amount that a person can leave another person (other than his or her spouse) without paying an estate tax. The unified credit exemption was $500,000 when Irvin executed his will and $1,000,000 when he died.

3

residuary beneficiaries"). Because Irvin's estate did not exceed the unified credit exemption, O'Possum Ridge and Lakeland asserted that the subject property should not have been ordered to be conveyed to Billie. Rather, O'Possum Ridge and Lakeland asserted that the chancellor should have ordered that the property should pass to the residuary beneficiaries.

¶8. As a result, on February 4, 2015, O'Possum Ridge and Lakeland filed a "Complaint to Confirm and Quiet Title, for Declaratory Judgment, and for Other Relief" in cause number 20150111. The following persons and entities were named as defendants: J. Murray Akers (Billie's executor and trustee under the deed of trust), Ophelia Ray, Rebecca Gouvier (James Harrell's executrix and beneficiary), Sarah Dees Marble, Avon United Methodist Church, March of Dimes Foundation, Mississippi State University, French Camp Academy, and "any and all persons or parties having or claiming to have any legal or equitable interest in or to the property."[5]

¶9. In March 2015, Mississippi State University and March of Dimes filed notices of appearance. Sarah Dees Marble wrote a letter to the court. And in April 2015, Ray filed an answer and requested that the court dismiss the complaint.

¶10. On September 21, 2015, O'Possum Ridge and Lakeland filed a motion for summary judgment. They reasserted that the subject property should have passed to the residuary beneficiaries, and they requested that the court reform the promissory note and deed accordingly. O'Possum Ridge and Lakeland also asserted that they had acquired the subject property by adverse possession. In addition, they noted that the action was, in part, an

_____

[5] Woods Junior College, which was listed as one of the residuary beneficiaries in Irvin's will, closed in 2003.

4

interpleader action. O'Possum Ridge requested that the court order that the payment due under the promissory note be deposited into the registry of the court until it was determined to whom it should be paid. Finally, O'Possum Ridge requested attorney's fees and court costs. Rebecca Gouvier, Avon United Methodist Church, and French Camp Academy subsequently joined the motion.

¶11. In January 2016, Ray filed a response to the motion for summary judgment. Ray argued that there was not a cloud on the subject property's title. And she also argued that she had acquired the subject property by adverse possession.

¶12. After several hearings, the chancery court entered an order granting summary judgment in May 2017. The court found that there was a cloud on the subject property's title and that O'Possum Ridge and Lakeland had acquired the property by adverse possession. The court then reformed the promissory note and deed of trust to reflect that the subject property should have passed to the residuary beneficiaries. The court also acknowledged that the action was, in part, an interpleader action and ordered O'Possum Ridge to deposit the amount due under the promissory note into the registry of the court for disbursement to the residuary beneficiaries, provided that no appeal was perfected. Finally, the court directed O'Possum Ridge and Lakeland to file an application for attorney's fees.

¶13. Thereafter, Ray filed a motion for reconsideration or, in the alternative, a motion for recusal. In the motion, Ray asserted that the chancellor should have recused after he allegedly engaged in ex parte communications with opposing counsel. O'Possum Ridge and Lakeland filed a response in which they denied any improper ex parte communication. Then,

O'Possum Ridge and Lakeland filed an application for attorney's fees.

¶14. After a hearing, the court entered an order on October 20, 2017, granting O'Possum Ridge and Lakeland $54,168.88 in attorney's fees from the amount that was to be deposited into the registry of the court as interpled funds. The court denied Ray's post-trial motion.

¶15. The court entered its final judgment on October 20, 2017, and on October 26, 2017, Ray appealed, claiming the chancellor erred by (1) granting summary judgment, (2) failing to consider the defenses of waiver and equitable estoppel, (3) finding that O'Possum Ridge and Lakeland acquired the property by adverse possession, (4) awarding attorney's fees from the interpled funds, and (5) failing to recuse.

¶16. After oral arguments in this case, and by order of this Court, the parties filed supplemental briefing on the following issues:

1. Is a collateral attack on the disposition of assets in a will proper in an interpleader action in a separate matter, or can the disposition of assets only be attacked in the estate action itself?

2. Is it proper for an interpleader to side with a particular party in an action? If not, how can the interpleader collect attorney's fees?

We will address the supplemental briefing issues first, and then we will address any remaining issues raised by Ray.

**DISCUSSION**

**I. Collateral Attack**

¶17. In this Court's order for supplemental briefing, we asked whether a collateral attack on the disposition of assets in a will is proper.

¶18. Our supreme court has held that judgments generally are not subject to collateral

6

attack. *Reed v. Gen. Motors Acceptance Corp.*, 87 So. 2d 95, 96 (Miss. 1956). Furthermore, "[a] bill of interpleader will not be permitted to be turned into a device for reviewing or correcting judgments either at law or in equity." *Commercial Nat. Bank & Trust Co. of Laurel v. Parsley*, 198 So. 2d 819, 822 (Miss. 1967) (quoting V.A. Griffith, Mississippi Chancery Practice § 423 (2d ed. 1950)). "It is true that our cases hold that an absolute void decree, order, or judgment may be assailed anywhere on collateral attack, but the right to do so is limited to those who are not estopped by affirmative conduct, laches or some other equitable doctrine." *Harrison v. G. & K. Inv. Co.*, 115 So. 2d 918, 774 (Miss. 1959); *see also Reed*, 87 So. 2d at 96.[6]

¶19.    The complaint in this case was a collateral attack on Irvin's will. The attack was not made in the civil action wherein the judgment was rendered, nor in an appeal from the action of the court in granting such decree; nor was it a proper suit brought for the sole purpose of declaring such decree void. The relief requested was that the chancery court reform the promissory note and deed to reflect that the subject property should have passed to the residuary beneficiaries. O'Possum Ridge and Lakeland also requested that the court find that they had acquired the property by adverse possession.

¶20.    However, even if the suit was brought for the sole purpose of declaring the decree void, O'Possum Ridge and Lakeland were estopped by their affirmative conduct. Irvin and O'Possum Ridge contracted for the sale of the subject property in 2003. A few months later,

---

[6] Mississippi Rule of Civil Procedure 60(b)(4) also provides that a "court may relieve a party or his legal representative from a final judgment, order, or proceeding [if] . . . the judgment is void."

7

O'Possum Ridge executed a promissory note secured by a deed of trust for the property, and the property was conveyed to O'Possum Ridge. O'Possum Ridge then paid annual installments of $30,000 to Billie until 2012 without complaint. And after Billie died in 2012, O'Possum Ridge paid Akers (Billie's executor and trustee under the deed of trust) in 2013. O'Possum Ridge redirected the payment to Ray following a demand letter. Although no payments were issued after 2014, O'Possum Ridge had already issued ten payments.[7]

¶21. With respect to the residuary beneficiaries, as discussed, the attack on Irvin's will was not made in the action wherein the judgment was rendered, nor in an appeal from the action of the court in granting such decree; nor was it a proper suit brought for the sole purpose of declaring such decree void.

¶22. Because the collateral attack on Irvin's will was improper, we reverse and render the judgment of the chancery court.

**II.    Attorney's Fees**

¶23. In the order for supplemental briefing, this Court also asked the parties whether the award of attorney's fees in this case was proper. The Appellant's brief raised this issue as well.

¶24. Our supreme court has held that "[a]n award of attorneys' fees and costs in favor of the party representing an interpleader action against funds interpled into the court registry is a discretionary matter lying with the trial court." *Amerihost Dev. Inc. v. Bromanco Inc.*, 786

---

[7] We note that there is a ten-year statute of limitations for actions to recover land. Miss. Code Ann. § 15-1-7 (Rev. 2019). However, Ray did not raise this defense in the chancery court.

So. 2d 362, 367-68 (¶25) (Miss. 2001). "A party who has properly brought an interpleader action may be entitled to an award of attorney's fees." *Id*. (citing *Maryland Cas. Co. v. Sauter*, 377 F. Supp. 68, 70 (N.D. Miss. 1974)).

¶25. However, a complainant in an interpleader action must be impartial. *Commercial Nat. Bank & Trust Co. of Laurel*, 198 So. 2d at 822. That is, an interpleader "must be a disinterested stakeholder not interested in the further contest of the liabilities or the rights of the parties." *Penn. Mut. Life Ins. Co. v. Williams*, 163 Miss. 324, 140 So. 875, 875 (1932). We note that O'Possum Ridge and Lakeland clearly advocated on behalf of the residuary beneficiaries. The interpleader action would have been proper if O'Possum Ridge and Lakeland had put the funds within the control of the chancery court and then exited the action, leaving any claimants to litigate their respective rights.[8]

¶26. Furthermore, even if the interpleader action had been proper, the 2003 judgment could not be collaterally attacked. The chancellor was bound by the earlier judgment, which conveyed the subject property to Billie, not the residuary beneficiaries. Therefore, we also reverse the award of attorney's fees in this case.

### III. Adverse Possession

¶27. In Ray's briefing to this Court, she claims that the chancellor erred by finding that O'Possum Ridge and Lakeland had acquired the subject property by adverse possession. We agree with Ray to the extent that the chancellor found that the possession was adverse.

___

[8] Because the complaint was a collateral attack and was not filed in the original action, the record does not indicate whether the residuary beneficiaries were given notice. However, the record in this case does not indicate that any of the residuary beneficiaries made claims to the funds prior to O'Possum Ridge and Lakeland filing the complaint.

¶28. Under the contract, O'Possum Ridge took possession of the property upon closing. O'Possum Ridge and Lakeland have had undisputed possession and title to the property since the 2003 deed for over ten years subject to the deed of trust. Furthermore, at oral argument, the Appellant and Appellees agreed that the Appellees—O'Possum Ridge and Lakeland—possessed and had title to the property subject to the deed of trust. Therefore, we reverse the chancellor's finding that O'Possum Ridge and Lakeland acquired the subject property by adverse possession. *See* Miss. Code Ann. § 15-1-13(1) (Rev. 2019); *Winters v. Billings*, No. 2017-CA-01347-COA, 2019 WL 192313, at *2 (¶12) (Miss. Ct. App. Jan. 15, 2019) (requiring clear and convincing evidence of adverse possession). We find that O'Possum Ridge and Lakeland have title to the property subject to the promissory note and deed of trust.

## IV. Recusal

¶29. Finally, Ray claims that the chancellor abused his discretion by failing to recuse after allegedly engaging in ex parte communications with opposing counsel. According to Ray, at a hearing on April 25, 2017, she returned to the courtroom after a break and observed the chancellor and opposing counsel speaking in a low tone. And when they realized she was in the courtroom, they immediately stopped talking. Ray admits that "no other evidence demonstrates what was discussed."

¶30. Mississippi Code of Judicial Conduct Canon 3(B)(7) states in pertinent part:

> A judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law. A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties

10

**concerning a pending or impending proceeding**.

(Emphasis added). Furthermore, "it is unprofessional for lawyers to engage in *ex parte* communications **on matters of substance** involving a matter before the judge." 5 Jeffrey Jackson, Mary Miller, Donald Campbell & Patricia Bennett, *Encyclopedia of Mississippi Law* § 42A:21 (2d ed. Oct. 2019) (emphasis added) (citing Miss. R. Prof. Conduct 3.5(b)). But "even where *ex parte* contacts are improper, a judge is not automatically disqualified based on such contacts. The court still looks at the totality of the circumstances to see whether a reasonable person would harbor doubts regarding the judge's impartiality." *Id*. (citing *Weissinger v. Simpson*, 861 So. 2d 984, 989 (¶21) (Miss. 2003)). The law presumes that a judge is qualified and unbiased. *White v. Yellow Freight Sys. Inc*. 905 So. 2d 506, 515 (¶23) (Miss. 2004). "To overcome this presumption, the movant must show beyond a reasonable doubt that the judge was biased or not qualified." *Id*. "Conclusory allegations unsupported by sufficient facts cannot overcome the presumption or require recusal." *Id*.

¶31. In response to Ray's motion for recusal, opposing counsel filed affidavits denying any ex parte communications concerning the proceeding. And at the hearing on the motion, the judge indicated that a brief conversation occurred possibly about the weather. Ray has not overcome the presumption that the chancellor was unbiased or acted impartially. Because Ray has not shown beyond a reasonable doubt that the chancellor should have recused himself, this issue is without merit.

## CONCLUSION

¶32. The chancery court granted Irvin's wife, as executrix, the authority to convey the

11

subject property to herself in 2003. Thereafter, O'Possum Ridge executed a promissory note secured by a deed of trust for the purchase of the property and accepted the deed to the property from Billie. We find that O'Possum Ridge and Lakeland Farms own the property subject to the promissory note and deed of trust. Because the 2015 collateral attack on Irvin's will was improper, we reverse and render the chancellor's judgment.

¶33. **REVERSED AND RENDERED.**

**BARNES, C.J., CARLTON, P.J., McDONALD AND LAWRENCE, JJ., CONCUR. J. WILSON, P.J., TINDELL AND C. WILSON, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J.; J. WILSON, P.J., McDONALD AND C. WILSON, JJ., JOIN IN PART.**

**McCARTY, J., CONCURRING IN PART AND IN RESULT:**

¶34. While I agree that the parties here were estopped from pursuing the suit to quiet title, I do not agree it was a collateral attack. Much of the language about collateral attacks is about *what* attacks are precluded.[9] Yet as O'Possum Ridge points out, the issue that arose in this appeal is *who* is prohibited from later contesting a judgment.

¶35. The company points us to law holding that "[a]n attack by a nonparty is not collateral . . . ." *United States v. City of Chicago*, 870 F.2d 1256, 1262 (7th Cir. 1989). An attack by a nonparty is not barred as collateral because "the nonparty did not have his day in court." *Id*. This accords with our precedent that "[t]he general rule that a judgment of a

---

[9] Generally speaking, "a 'collateral attack' is . . . every proceeding in which the integrity of the judgment is challenged, except those made in the action wherein the judgment is rendered, or by appeals, and except suits brought to obtain decrees declaring judgment to be void ab initio." *McKinney v. Adams*, 95 Miss. 832, 50 So. 474, 476 (1909).

court having jurisdiction of the parties and the subject matter is conclusive *on the parties and their privies* in collateral proceedings . . . ." *Gill v. Johnson*, 206 Miss. 707, 718, 40 So. 2d 600, 604 (1949) (emphasis added).

¶36.    Here, O'Possum Ridge was not a party to the civil action involving probate of Irvin's will and would not have been a proper party in that particular chancery proceeding. Its proper route to quiet title was then "a bill in the chancery court to have [its] title confirmed and quieted" pursuant to Mississippi Code Annotated section 11-17-29 (Rev. 2019). While that route may be foreclosed by estoppel, laches, or other affirmative defenses, I do not believe it was barred as a collateral attack. For this reason, I concur in part and in result.

**WESTBROOKS, J., JOINS THIS OPINION. J. WILSON, P.J., McDONALD AND C. WILSON, JJ., JOIN THIS OPINION IN PART.**

13